UNITED STATES, Appellee

v

ALLAN PETERSON, Private E-1, U. S. Army, Appellant

8 USCMA 241, 24 CMR 51

No. 9714

Decided September 13, 1957

*First Lieutenant Philip L. Evans* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig.*

*Captain Thomas J. Nichols* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant Arnold I. Burns.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused pleaded guilty to three separate specifications alleging absence without leave, escape from confinement, and desertion, all in contravention of specific punitive Articles of the Uniform Code of Military Justice. The plea was entered pursuant to an understanding that the convening authority would not approve a sentence in excess of dishonorable discharge, total forfeitures, and confinement for two years. During the presentencing procedure, the accused took the witness stand and gave an unsworn statement in mitigation. While his testimony was not under oath, if believed, it pictured a life filled with hardship, domestic difficulties, and lack of income. After the court closed to deliberate on the sentence, it reopened and the president requested information as to whether it was mandatory to forfeit all pay and allowances when a bad-conduct discharge was awarded. The law officer properly advised the court that it was not, and thereafter the members returned a sentence which imposed a bad-conduct discharge, confinement at

hard labor for two years, and forfeiture of $40 per month for the same period of time. The staff judge advocate in his review called the convening authority's attention to the fact that the court-martial had adjudged a sentence which permitted an allotment to be paid to accused's wife but, for reasons set out in the review, he recommended that the bad-conduct discharge be executed at the earliest practicable period so that the accused would not remain on the Federal Government payroll longer that was required by law.

At the time the accused's petition for grant of review reached this Court, we had granted a petition in United States v Cleckley, 8 USCMA 83, 23 CMR 307, and it was believed that the principles involved therein would govern the issues of this case. On June 21, 1957, we rendered our opinion in that case, and, while the questions in the instant appeal are not on all fours with those in Cleckley, the holding there is dispositive of the principal argument that this

242

sentence is inconsistent on its face. Here, as there, the argument commences with the assertion that the punitive discharge provision of the sentence must be stricken for the reason that the sentence returned by the court-martial shows a clear intent to require the Government to keep the accused in a pay status, and matters outside the present record may defeat that intent if the punitive discharge is affirmed on appeal. At that point the arguments part, for here it is contended that the execution of the bad-conduct discharge will defeat that intent, while in the former case it was asserted that a Federal statute brought about that result. That departure is not of great significance, for it is admitted by the Government that, if and when the punitive discharge is executed, the accused will be in a nonpay status for the period between that time and his release from confinement.

We cannot follow the defense argument because to do so requires us to find an inconsistency from an assumption which has no basis in logic or reason, and, even if we were willing to go that far, the inconsistency only comes into existence upon the happening of a future event which may never occur. From the sentence imposed, it is apparent that the court-martial intended to separate the accused from the service. Surely we must assume the court members knew that when and if his discharge was effectuated, his pay status would end, and it would be contrary to common sense to conclude that the members had a purpose or right to require the United States Government to keep him on the Federal payroll for two years without regard to his subsequent deportment or conduct or the Government's right to earlier terminate the relationship. Therefore, rather than being convinced that the court intended to convert the punishment for a crime to a largess for the offender, we are of the opinion that the period for which the forfeitures were imposed was selected either because the court members did not want the accused personally to receive any funds while he was serving time or to set an outside limit to the time forfeitures could be collected if the accused remained in the service.

Sometimes execution of a bad-conduct discharge is suspended if an accused displays a proper attitude and merits another opportunity to serve his country well. At other times, there is no suspension and execution is upon completion of appellate review. Military authorities who review the record subsequent to trial have the right to make the final decision in that regard, and we do not find even a straw in the wind that the court-martial intended to tie the hands of those officials by casting on them the duty to refrain from executing the punitive discharge for two years. Certainly the sentence as voted is within the power of the court-martial to impose, it is in keeping with the law and customs of the service, and inconsistency cannot be found within its terms. The most that can be said in that connection is that if the bad-conduct discharge is executed before the accused has served his time, there can be neither forfeiture nor allotment because the source of the money is cut off. In that sense, if the court-martial intended to guarantee payment to the accused and his family for two years, that intent may be breached. Now, it may not be likely, but it is conceivable, that the punitive discharge will not be executed until the term of confinement has been served, and, in that event, the allotment will continue. But, in all events, that is a matter which has not yet been reached and a subject upon which we are not required to speculate. What is now apparent is this: A large portion of the confinement will have been served before execution can be ordered as that cannot be done before completion of appellate review. Hence, even at this time, allowances are being paid and they will continue to accrue to the benefit of accused's family as long as he is in a pay status. That is the most the court-martial could have intended. It could not possibly have known when he would leave that status, and it is abundantly clear to us that the period of forfeitures was fixed at twenty-four months as the outside limit. Certainly the court-martial members could not have intended to guarantee the accused an income payable to his family for the entire period. Such

**243**

would follow as a matter of course if we accepted the contentions of the accused. We, therefore, overrule the first contention.

There are two other issues raised by the defense, but they will not detain us long. The first contention ▪ states the proposition to be that the law officer erred when he replied to a question asked by the president of the court. After deliberating for some few minutes, the court reopened and the law officer was specifically requested to advise the court-martial members as to whether the imposition of a bad-conduct discharge required a forfeiture of all pay and allowances. He answered the question negatively and properly, but it is now contended he should have gone further and volunteered the advice that the execution of a bad-conduct discharge prior to the time the accused had finished serving his confinement would result in loss of the allowances. We find no duty on the part of the law officer to voluntarily advise the court-martial members to that effect. He could not anticipate the terms of the sentence which would be returned, and, when it was announced later, it was legal and consistent. There was no request for any instruction on that subject, and, unless the court was attempting to freeze a creditor-debtor relationship between the accused and the Government for two years, an instruction would have been inappropriate. Having previously concluded that the court was not seeking to create that favorable relationship, we overrule this assignment.

The last error argued has to do with a portion of the review by the staff judge advocate. In furnishing his advice to the ▪ convening authority, he recommended that the punitive discharge be executed as soon as practicable so that the United States Government would not be liable for the support of accused's family. The accused had demonstrated that he would not render any service of value to the United States Government, and the reviewing lawyer felt he should be taken off the payroll when appellate review was completed.

244

It is clear from the contents of the review that the staff judge advocate was expressing his own individual opinion. It is also clear from the report that the convening authority was fully and properly advised on his power and authority to extend leniency to the accused. Defense does not argue to the contrary, but the thrust of their position is that the accused was denied an individualized review because the staff judge advocate failed to give individual consideration to accused's case and blindly adhered to a policy that service personnel should not be paid unless they furnish good and valuable service to the Government. That contention is without merit as the reviewer's report shows that he particularly mentioned the past unsavory civilian record of the accused, his lack of value to the service, and his attitude that he desired to be separated from the service. The discussion of those matters, coupled with the other items mentioned in the report, demonstrate beyond peradventure that the staff judge advocate was measuring this accused only for favorable or unfavorable consideration by the convening authority. Therefore, it is hard for us to understand in what manner the staff judge advocate failed to individualize his consideration or to make it clear to the convening authority that the latter was determining the rights of this particular offender. When the review is considered by its four corners, it definitely establishes that the staff judge advocate understood the problem himself and that he pointed up clearly to the convening authority the fact that the latter had the alternative of continuing the accused in a pay status or depriving him of that benefit because he had not fulfilled his service obligation. While the convening authority followed the latter alternative, he was well within permissible limits in so doing.

The decision of the board of review is affirmed.

Judge FERGUSON concurs.

QUINN, Chief Judge (concurring):

In United States v Cleckley, 8 USCMA 83, 23 CMR 307, I disagreed with the majority of the Court because,

in my opinion, the evidence required the law officer to instruct on the effect of the provisions of 10 USC § 3636. Had such an instruction been given, the court-martial might have sentenced the accused to a bad-conduct discharge instead of a dishonorable discharge. Here, the adjudged sentence includes only a bad-conduct discharge. Hence, the failure to instruct could not have harmed the accused.

Turning to the sentence itself, I find nothing inconsistent in it. It is in the usual form and entirely within legal limits. I am also unable to find in its provisions an intention to postpone execution of the discharge until after the expiration of the period of forfeitures. See my dissent in Cleckley, supra, for a discussion on the previous form and language of a court-martial sentence. The law officer is not bound to instruct the court members on the time the law fixes for execution of any part of the sentence it adjudges.

Finally, I agree with the conclusion in the principal opinion that the staff judge advocate's review is of an "individualized" nature. Accordingly, I concur in affirming the decision of the board of review.