UNITED STATES, Appellee

v

ROBERT W. TURNER, Airman Third Class, U. S. Air Force, Appellant

14 USCMA 435, 34 CMR 215

No. 17,215

March 13, 1964

*Major James E. Caulfield* argued the cause for Appellant, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*

*Major Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

QUINN, Chief Judge:

The question on this appeal is whether the special court-martial which tried the accused was misinformed or confused regarding its sentence powers.

On his plea of guilty, the accused was convicted of wrongful appropriation of a motor vehicle belonging to a fellow airman. During the sentence procedure, evidence was introduced of a previous conviction by summary court-martial for wrongful appropriation of $11.00 from another airman. Thereafter, a number of the accused's supervisors testified to his capabilities as an automobile body repairman, and indicated he would be welcomed back if retained in the service. The accused also testified. He reviewed his civilian and military background and assured the court-martial that this would be his "last scrape." Defense counsel then spoke extensively in the accused's behalf. Among other things, he asked the court-martial to consider the "stigma"

436

attached to "certain sentences" it could impose, which "would be with . . . [the accused] for the rest of his life," and which would prejudice him in his efforts to obtain employment, education, or "whatever he chooses to do or seeks to do." In opposing argument, trial counsel pointedly referred to the previous conviction, and contended it demonstrated the accused was incorrigible. As he began his own "estimation" of the accused, defense counsel interrupted. He maintained that trial counsel could not properly advance his "personal opinion." The president of the court-martial sustained the objection, and instructed the court members to disregard "any statement of opinions" by trial counsel. Trial counsel concluded his argument by urging the court to impose "the maximum punishment provided by the law."

The president instructed on the maximum sentence. In part, he advised the court-martial that the maximum "should be restricted" to cases involving aggravated circumstances. The court closed for deliberation. Fourteen minutes later, it reopened to "ask questions on types of discharges." Trial counsel advised the court-martial that the only type of discharge it could adjudge was a bad-conduct discharge. Defense counsel concurred in the advice. At that point, a court member interrupted with a question which led to the following discussion:

"MAJ CARMINE What would be the effect of a bad conduct discharge on the accused?

"DC It deprives him of the same privileges as a dishonorable discharge, sir, if my memory is correct. He is deprived of all veterans' benefits.

"TC It is essentially the same as an undesirable discharge.

"DC It is not essentially the same. There is more stigma attached to a bad conduct discharge than an undesirable.

"LT ALLEE Is the undesirable discharge still in effect?

"TC It is still in effect, sir, but the only discharge this court can adjudge is a bad conduct discharge.

"MAJ MORTON Is a bad conduct discharge the same as a dishonorable?

"DC He is deprived of all Government benefits.

"MAJ MORTON But he doesn't lose his rights as a citizen?

"TC Sir, as trial counsel, it is my duty to advise and instruct you in these sort of matters and it is my opinion a bad conduct discharge is completely akin to the undesirable discharge.

"DC Sir, I take issue with that statement. At this time, I think I am going to have to move for a mistrial based on that statement.

"I withdraw my motion, sir, but I do object to that statement. It is not a true statement.

"PRES Prosecution will refrain from using opinions in his instructions to the court.

"Does any member of the court desire specifics of the discharge, or any other instructions from counsel?

"LT ALLEE I have one other question. Is it possible as a result of our findings we could recommend some type of board action?

"DC That is up to the man's commander and not within the purview of the court.

"TC No, sir, that is not within the purview of the court.

"PRES Anything else?

"Court members remain silent.

"PRES The court will be closed."

Within the limits of punishment prescribed by the Uniform Code of Military Justice and the President, ▪ a court-martial is free to impose any sentence it considers fair and just. It is, therefore, important to both the accused and to the Government that the court-martial be as fully informed as possible about all matters that might affect its decision. The court-martial, we said recently, should be provided with the

"torch of enlightenment." United States v Hutton, 14 USCMA 366, 34 CMR 146. A preference for enlightenment, however, does not mean that all possible circumstances which might relate to the sentence must be presented to the court-martial. A court-martial, for example, usually has no direct concern with, and ordinarily need not be specifically instructed upon, the myriad of collateral consequences that a particular sentence adjudged by it might have. United States v Pajak, 11 USCMA 686, 29 CMR 502; United States v Armbruster, 11 USCMA 596, 29 CMR 412. But, the evidence in a particular case might make it arguable that the court-martial needs information on the special effects of a specific sentence, if it is intelligently to determine a punishment appropriate to the accused before it. See United States v Quesinberry, 12 USCMA 609, 31 CMR 195, concurring opinions of Chief Judge Quinn and Judge Kilday; United States v Cleckley, 8 USCMA 83, 23 CMR 307, dissenting opinion of Chief Judge Quinn. Using this argument of particularization, the accused contends the court members here were so confused about the special effects of a bad-conduct discharge, and as to a court-martial's ordinary clemency prerogatives, that he was "denied fair consideration."

In United States v Phipps, 12 USCMA 14, 30 CMR 14, we pointed out that a court-martial has no power under the Uniform Code to adjudge any type of discharge other than a dishonorable or bad-conduct discharge. A special court-martial is further limited by the provisions of Article 19 of the Code, 10 USC § 819, in that it can adjudge only a bad-conduct discharge. At trial, Government and defense counsel were agreed on that limitation. The record of trial clearly indicates the court-martial accepted counsel's comments as a correct statement of the scope of its sentence power. There was no confusion and no misunderstanding whatever as to the type of discharge the court-martial could adjudge. We turn, therefore, to the discussion on the effects of a bad-conduct discharge.

In comparing a bad-conduct discharge to other discharges, trial and defense counsel assumed, without any basis apparent in the record, that the court members knew the exact consequences of the analogues. If the record showed only the difference of opinion between counsel, it might be argued that trial counsel, as the representative of the Government, spoke with more authority, and, therefore, his attempt to lessen the opprobrium and disabilities of the bad-conduct discharge influenced the court members to the accused's prejudice. However, the bedrock for any such argument was effectively eliminated by the president's admonition to trial counsel to "refrain from using opinions." The remark compels the conclusion that the president rejected trial counsel's equation of the bad-conduct discharge with the undesirable discharge as "opinion," rather than advice on the law. However, the president left undisturbed defense counsel's representations that a bad-conduct discharge "deprived [the accused] of all veterans' benefits" and all "Government benefits." These comments were the only relevant references to Major Carmine's question about the "effect" of a bad-conduct discharge. Recognizing his "ultimate responsibility" for instructing the court-martial, the president then asked the court members if they "desire[d] specifics of the discharge"; he also asked counsel if they had any "other instructions." See United States v Quesinberry, supra, at page 611. The members expressed no desire for further information about the collateral consequences of a bad-conduct discharge; and neither counsel asked for additional instructions on the point. On this record, which covers defense counsel's argument on the general postservice "stigma" of "certain sentences" that might be adjudged by the court to some of the consequences of a bad-conduct discharge, it cannot "be seriously contended that the court was not aware of the general effects of a bad-conduct discharge." United States v Quesinberry, supra, at page 612. It is clear the court members were not so confused about the effects of a bad-conduct discharge as to be unable intelligently to consider whether the im-

438

position of such a discharge would be appropriate punishment for the accused.

We turn next to Lieutenant Allee's question regarding the court's right to recommend "some type of █ board action." The accused contends the absence of an answer to this question improperly deprived the court members of "information concerning their clemency prerogatives." Disregarding the elements of waiver, the record of trial leaves no room for any inference of prejudice to the accused.

Apart from the formal sentence, a court-martial can include in the record of trial "a brief statement of the reasons" for the sentence. Manual for Courts-Martial, United States, 1951, paragraph 76b(4). Logically, the statement could include a recommendation for some sort of administrative action as to the accused. Thus, it would not be improper to suggest the accused might benefit from a program of psychotherapy. Cf. United States v Bunting, 6 USCMA 170, 178, 19 CMR 296. In addition, paragraph 77a of the Manual expressly recognizes the right of a court member to recommend clemency to ameliorate the sentence of the court-martial. A clemency recommendation made contemporaneously with the sentence may sometimes indicate that the court members misunderstood the full scope of their sentence powers. United States v Kaylor, 10 USCMA 139, 27 CMR 213; United States v Grcich, 10 USCMA 495, 28 CMR 61; see also United States v Cavallaro, 3 USCMA 653, 14 CMR 71. But the concurrence of sentence and recommendation need not necessarily be the product of confusion or misunderstanding. If the record of trial shows the court-martial understood the relationship of the recommendation to the sentence adjudged, there is no reason to question either the sentence or the recommendation. In a bad check case, for example, the court-martial might properly recommend remission of the punitive discharge imposed by it if, before the convening authority completes his official action, the accused makes restitution, and otherwise shows by his attitude and conduct in the intervening period that he merits such consideration. See United States v Camp, NCM 63–00803, decided May 22, 1963; United States v Wright, NCM 63–00473, decided April 4, 1963; cf. United States v Grcich, supra. A recommendation of that kind is not so "inherently inconsistent . . . [with the imposition of a punitive discharge, as to be irreconcilable with] the court's actions and . . . [create doubt] whether . . . [the members] had a proper appreciation of their own [sentence] duties and powers." United States v Kaylor, supra, at page 141.

With appellate defense counsel, we may disapprove of the statement in United States v Stanley, 29 CMR 747, at page 748, that "it is not part of . . . [the court-martial's] function or authority . . . to recommend any kind of a personnel action in relation to the accused." But acceptance of the principle that a court-martial can legally and properly recommend administrative action, which might eventually lead to a lessening of the burden of a sentence imposed by it, does not necessitate reversal of the accused's sentence. How would a recommendation for "some type of board action" affect the accused? Is there a fair risk that he was prejudiced by the absence of that kind of recommendation?

We agree with the board of review that there is nothing to support the supposition that if an instruction had been given as to the court members' right to recommend administrative action, the court would not have imposed a bad-conduct discharge. We are also of the opinion that if the court-martial was to avoid detracting in any way from the idea that on the basis of the matters presented to it, a bad-conduct discharge was a proper punishment, inescapably its recommendation that an administrative board be convened to consider another form of discharge could be, at best, only a plea to ascertain and evaluate the accused's conduct between trial and discharge. This is precisely the kind of consideration accorded an accused in regular Air Force routine. See United States v Cash, 14 USCMA 96, 33 CMR 308. We are, therefore, unable to discern any fair risk of harm

to the accused by the failure to instruct the court-martial that it could make a recommendation for clemency which would not be inconsistent with the sentence it imposed.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.