UNITED STATES, Appellee

v

JAMES WILSON KEITH, Fireman, U. S. Navy, Appellant

22 USCMA 59, 46 CMR 59

No. 25,532

November 24, 1972

*Lieutenant Thomas M. Geisler, Jr.,* JAGC, USNR, argued the cause for Appellant, Accused.

*Captain Daniel R. Remily,* USMCR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel George L. Bailey,* USMC, *Commander Michael F. Fasanaro, Jr.,* JAGC, USN, *Lieutenant E. Perry Johnson,* JAGC, USNR, and *Lieutenant James B. Ginty,* JAGC, USNR.

DUNCAN, Judge:

We granted review in this case to consider two issues related to the military judge's instructions on sentence.

The appellant pleaded guilty before a special court-martial to absence without leave and a number of specifications alleging drug offenses. Prior to sentencing, the defense presented extensive evidence in extenuation and mitigation. The appellant, in an unsworn statement, acknowledged his wrong, asked for leniency on the basis of his cooperation with authorities in eradicating drug abuse from the ship, and requested that the court not impose a discharge as part of its sentence.

During argument on sentence, trial counsel contended at length that despite the appellant's cooperation he should be punitively discharged from the service. Defense counsel attempted to counter this argument by urging the court not to impose a bad-conduct discharge but to leave the type of discharge the appellant should ultimately receive to an administrative discharge board. He argued, "it will not be honorable as the prosecution has tried to lead you to believe." In closing argument, trial counsel stated that "[i]f you don't adjudge a bad conduct discharge he will be discharged from the Navy with a general discharge under honorable conditions—under honorable conditions."

Inasmuch as this was a rehearing, the military judge informed the members of the court:

"The maximum punishment which may be adjudged in this case is: confinement at hard labor for six months; reduction to the pay grade of E-1; and a bad conduct discharge.[1] You are instructed that you cannot adjudge any forfeitures in this case."

Before the sentence worksheet (Appellate Exhibit 2) was handed to the court members, those portions relating to forfeitures were lined out at the specific request of defense counsel.

Before the court closed to deliberate on sentence, the military judge, in answer to a member's inquiry, stated:

"The question that has been asked is: Is there any other type of discharge available in this case? There is not. You may adjudge only a bad conduct discharge. You may not adjudge any administrative discharge under general, unfitness, or unsuitability. You may not adjudge any type of discharge other than a bad conduct discharge in this case, if you elect to adjudge a discharge at all. I request the reporter to mark this question as an appellate exhibit [Appellate Exhibit 3] next in order."

When no further questions were forthcoming, the court closed. Thirty minutes later, it reopened and the following colloquy occurred:

"PRES: Your Honor, I have a number of questions.

"MJ: Very well.

"(The questions were marked by the reporter as Appellate Exhibit 4.)

"MJ: Gentlemen, the discussion of trial and defense counsel concerning discharges I think were observations of the—to the effect that the accused at one time or another would be discharged from the service, I believe, either as a result of the expiration of his enlistment or as the result of some administrative action. The court, however, is limited to either retaining the man, in which case you do not make a recommendation for retention but you simply do not adjudge a bad

---

[1] This was the sentence imposed at the original hearing. A rehearing was ordered by the convening authority because "the recordings of the proceedings of [the original] trial were lost before the record of trial could be prepared." (Prosecution Appellate Exhibit 1.)

conduct discharge. The only discharge which this court can adjudge or consider is a bad conduct discharge. Is there any further question on that matter? In view of the nature of the questions you have I think I can answer these questions. These are not the type questions we need propound in writing. I can take these verbally.

"MEM: All of the questions are along these lines. My question is: If the court does not award a bad conduct discharge who will determine what type of discharge he gets at some later date and what observations are available?

"MJ: I think that is not really properly a matter for the court.

"TC: It has been raised by the defense and since the defense raised it, the court should be fully instructed about what should follow if they do not adjudge a bad conduct discharge.

"DC: Your Honor, before we go into this any further perhaps it would be advisible [sic] that the court have an Article 39(a) Session as to how we might further enlighten the court rather than argue in front of the court. We may mislead them and give them the wrong impression.

"MJ: The court will recess. You may wait in closed session and I will hold an Article 39(a) Session and we will discuss what to advise the court in this matter. The court is recessed."

During the out-of-court session, the military judge declined to give an instruction on clemency.[2] He told counsel:

"Ordinarily had there been a request for a clemency instruction I would have given the clemency instruction. But at this stage of the proceedings if a clemency instruction were given it would seem to give the court, if they are considering a bad conduct discharge,

and obviously they are, it would seem to indicate that they could give him a bad conduct discharge and make a recommendation for clemency. There is no indication that anybody will take favorable action on it. From your viewpoint it would be prejudicial to the accused to instruct on clemency."

Upon reopening the court, the military judge instructed:

"MJ: Gentlemen, during the argument of counsel I permitted counsel to refer to discharges in argument because they were well into those statements and I did not consider it appropriate to interrupt their argument and there had been no objection by either counsel. There had been no evidence either put before the court concerning administrative discharges or other matters concerning discharges. If you recall earlier in the trial I instructed you that you would take the law as I gave it to you; that I would be the sole source of the law for this court; and I would remind you of that. You must disregard any other source of law or information which you have applying to this court. You are instructed to disregard any reference to administrative discharges made by counsel in their argument. You are again instructed that the maximum punishment in this case is a bad conduct discharge; confinement at hard labor for six months; and reduction to pay grade E-1. You will not adjudge or recommend or consider the possibility of any type administrative discharge. If you decide to adjudge any discharge in this court-martial it can only be a bad conduct discharge.

"MJ: Are there any other questions by any member of the court?

"PRES: No, Your Honor.

"MJ: The court is closed."

After deliberating for an additional 53 minutes, the court reopened and sentenced the accused to a bad-conduct discharge, confinement at

_____
[2] See Appendix.

hard labor for four months, with pretrial restraint to count toward the four months.

The Court of Military Review affirmed the conviction and sentence with one member dissenting. The latter believed that under the circumstances of this case "the trial judge should have sua sponte instructed the court regarding recommendation to clemency and should have made his instructions regarding administrative discharges more complete and more correct." In his opinion the appellant "was deprived of his entitlement to have his sentence adjudged by a court unfettered by incomplete, misleading and erroneous instructions."

Appellant contends that the sentencing instructions were incomplete, misleading, and erroneous because of the military judge's refusal properly to advise the court members about administrative discharges and their powers, singly or together, to recommend clemency.

Appellant maintains that the questions submitted by at least a majority of the court members[3] evidenced an interest by them in having him not subjected to the stigma of a bad-conduct discharge, but rather to ameliorate his future either by making it possible for him to receive a nonpunitive administrative discharge or by giving him a probationary period during which he might be kept under some degree of observation to determine whether he might be retained or, if not retained, what type of discharge would be appropriate. To this end, it is argued, the court was interested in making an "observation," that is, a recommendation to other authorities.

Appellate defense counsel acknowledges that the court members may not *impose* an administrative discharge (United States v Phipps, 12 USCMA 14, 30 CMR 14 (1960)), *award* a *sus-*

*pended* bad-conduct discharge (United States v Marshall, 2 USCMA 342, 8 CMR 142 (1953); cf. United States v Kaylor, 10 USCMA 139, 27 CMR 213 (1959)), or, contemporaneously with announcement of sentence, recommend that an administrative discharge be *substituted* for the bad-conduct discharge assessed (United States v Grcich, 10 USCMA 495, 28 CMR 61 (1959)). However, since a post-trial recommendation by the court that an administrative discharge be substituted for the bad-conduct discharge is legal and proper (United States v Huber, 12 USCMA 208, 30 CMR 208 (1961)), counsel asserts that the military judge erred when he told defense counsel that " '[t]hey [the court] cannot make a recommendation for an administrative discharge.' "

Counsel calls attention to the clemency instruction in the Military Judges' Guide, Department of the Army Pamphlet No. 27–9, May 19, 1969, and maintains that such instructions were necessary "in view of the members' evident desire to find some alternative other than a straight bad conduct discharge." The judge's failure to give such an instruction, coupled with the instruction that they "will not . . . consider the possibility of any type administrative discharge," was, allegedly, prejudicial error.

Appellate Government counsel maintain that the military judge correctly instructed the court as to the only type of discharge which could be adjudged; that he was under no obligation to provide the court members with extensive information concerning administrative discharges; and that such information, if given, could only have been used for the improper purpose of speculating upon action others might possibly take at some future time. Government counsel also contend that the military judge did not abuse his discretion in denying the defense request for a clemency instruction. Reading of the

---

[3] This special court was composed of three members and the military judge. Appellate Exhibit 3 was signed by Lieutenant Harrell and Appellate Exhibit 4 by Lieutenant Jaques. Whether Lieutenant Winter was the author of any of the other questions is unknown.

standard clemency instruction at a time when the members were also being informed that they had no power to adjudge an administrative discharge would have had the effect of telling the court to "'go ahead and adjudge a bad conduct discharge if you want to and make a clemency recommendation thereafter.'" They also argue that clemency was not foreclosed to the appellant. The Manual for Courts-Martial United States, 1969 (Revised edition) (paragraphs 48*b* and 77*a*), sets forth the manner in which defense counsel, *after trial,* may obtain from the court members a recommendation for clemency.

The military judge was correct in his instruction that in the event the court decided "to adjudge any discharge in this court-martial it can only be a bad conduct discharge" (United States v Phipps, supra), and that they could not "adjudge . . . any type administrative discharge." See United States v Grcich, supra, and cases cited therein. See also United States v Pope, 17 USCMA 156, 37 CMR 420 (1967). The issue before us is not that simple. Rather, we are concerned with whether, in light of the inquiries of the court members, the standard advice on imposable punishment and an adjuration concerning administrative discharge was adequate to allow the court "intelligently to determine a punishment appropriate to the accused before it." United States v Turner, 14 USCMA 435, 438, 34 CMR 215 (1964). In *Turner,* this Court unanimously declared, at pages 437–438:

"Within the limits of punishment prescribed by the Uniform Code of Military Justice and the President, a court-martial is free to impose any sentence it considers fair and just. It is, therefore, important to both the accused and to the Government that the court-martial be as fully informed as possible about all matters that might affect its decision. The court-martial, we said recently, should be provided with the 'torch of enlightenment.' United States v Hutton, 14 USCMA 366, 34 CMR 146 [1964]."

In *Turner,* a court member inquired whether "'as a result of our findings we could recommend some type of board action.'" Defense counsel replied, "'That is up to the man's commander and not within the purview of the court.'" *Id.,* at page 437.) Trial counsel agreed. On appeal, counsel for Turner contended that the absence of an answer to this question deprived the court members of information concerning their clemency prerogatives. With regard to this contention, we stated:

". . . [P]aragraph 77*a* of the Manual expressly recognizes the right of a court member to recommend clemency to ameliorate the sentence of the court-martial. A clemency recommendation made contemporaneously with the sentence may sometimes indicate that the court members misunderstood the full scope of their sentence powers. United States v Kaylor, 10 USCMA 139, 27 CMR 213 [1959]; United States v Grcich, 10 USCMA 495, 28 CMR 61 [1959]; see also United States v Cavallaro, 3 USCMA 653, 14 CMR 71 [1954]. But the concurrence of sentence and recommendation need not necessarily be the product of confusion or misunderstanding. If the record of trial shows the court-martial understood the relationship of the recommendation to the sentence adjudged, there is no reason to question either the sentence or the recommendation." [*Id.,* at page 439.]

In *Turner,* we were unable to discern any firm risk of harm to that accused "by the failure to instruct the court-martial that it could make a recommendation for clemency which would not be inconsistent with the sentence it imposed." (*Id.,* at page 440.)

■ The language of *Turner* makes it clear that in a proper case it is error for the military judge to fail to disclose to the court members their right to recommend clemency. (See Appendix.) Whether the error is prejudicial depends upon the particular circumstances of the case.

In the case at bar, the numerous questions of the court members reflect that they were very confused about what they could or could not do with regard to sentence, due in large part to the arguments of counsel. The military judge acknowledged that he had permitted counsel to refer to discharges in argument because they were well into those statements and did not consider it appropriate to interrupt their arguments, and because there had been no objection by either counsel. He declined, however, to give an instruction on the right of the court members to recommend clemency, despite a request by one of the members for guidance as to "what observations are available." Instead, he completely foreclosed the members from "recommend[ing] or consider[ing] the possibility of any type administrative discharge."

■ Ordinarily administrative discharges and recommendations for clemency would not be discussed in a court-martial and the military judge would give no instructions thereon. Cf. United States v Quesinberry, 12 USCMA 609, 31 CMR 195 (1962). But this is not an ordinary case. Here the military judge had permitted counsel to discuss administrative discharges at length leading a court member "to believe that other types of discharge were possible." The member inquired, "Do we, in fact, decide on retention or BCD only or do we have an option of something in-between." (Appellate Exhibit 4.)

Under the circumstances of this case, we believe that the military judge erred in failing to inform the court of the conditions under which they could, after announcement of sentence, recommend an administrative discharge, disapproval of the adjudged punitive discharge or suspension of the latter. (See Appendix.) We need not decide, however, whether the failure to so instruct was prejudicial as we find other error necessitating a rehearing on sentence. We note in passing that defense counsel was not foreclosed from later formulating a clem-

**22 USCMA 64**

ency petition. Paragraphs 48k(1) and 77a, Manual, supra.

II

The second issue questions whether the sentence instructions were incomplete, misleading, and erroneous because of the military judge's instruction that no forfeitures would be adjudged by the court, and his failure to instruct that forfeitures might be imposed in the place of a bad-conduct discharge.

In United States v Brousseau, 13 USCMA 624, 33 CMR 156 (1963), also a rehearing, an analogous question was before us. In *Brousseau*, as here, the original sentence was a bad-conduct discharge, confinement at hard labor for six months, and reduction to airman basic. The law officer, in *Brousseau,* after informing the court of the maximum imposable punishment, stated, "'I would like to call your attention to the fact that no forfeiture may be adjudged in this case.'" (*Id.,* at page 625.) Before closing to deliberate on sentence, the following colloquy took place:

"'PRES: We are correct in understanding that no forfeiture may be adjudged?

"'LO: No forfeiture may be adjudged in any degree.

"'PRES: Not in connection with the maximum sentence?

"'LO: No forfeiture of any kind may be imposed.'" [*Id.,* at page 626.]

In reversing and directing that a rehearing on sentence may be ordered, we stated in *Brousseau,* at page 626:

"In case of a rehearing 'no sentence in excess of or more severe than the original sentence may be imposed.' Article 63(b), Uniform Code of Military Justice, 10 USC § 863.

"We appreciate the fact that, as in this instance, upon rehearing on the merits, the law officer is in a difficult and delicate position. He is under the obligation of instructing the court as to the maximum

sentence imposable. He must choose such language as to limit the maximum imposable sentence to that at the prior trial and still he dare not indicate that such was the punishment found appropriate on a prior trial. See United States v Jones, 10 USCMA 532, 28 CMR 98 [1959]. Notwithstanding, it is essential that the court-martial be fully and properly informed as to the sentences available to it.

"In his original statement as to the maximum sentence the law officer was, minimally, correct. United States v Eschmann, 11 USCMA 64, 28 CMR 288 [1959]. However, in the language he chose in eliminating forfeitures and in his replies to the questions propounded by the president of the court, the law officer fell into error. His language did not take into consideration the possible substitution of other punishments for the previously adjudged bad-conduct discharge, confinement and reduction. In United States v Smith, 12 USCMA 595, 31 CMR 181 [1961], we approved an instruction on maximum sentence in a case upon rehearing which properly informed the court-martial as to such possible substitutions. See also United States v Quesinberry, 12 USCMA 609, 31 CMR 195 [1962]; United States v Johnson, 12 USCMA 640, 31 CMR 226 [1962]; United States v Rodriguez-Garcia, 12 USCMA 647, 31 CMR 233 [1962]; United States v Prow, 13 USCMA 63, 32 CMR 63 [1962]."

The Government seeks to distinguish *Brousseau* from the case at bar on the ground that in this case the matter of forfeitures was not highlighted, as in *Brousseau,* by a colloquy between the president and the military judge; that defense counsel specifically approved the instruction and requested that the paragraph on the worksheet referring to forfeitures be lined out; and that, assuming error, *arguendo,* the nature of the offenses, together with the court's clear intent to separate this appellant from the service, makes it inconceivable that the court would have sub-

stituted forfeitures in lieu of the adjudged bad-conduct discharge.

We do not agree that the two cases are distinguishable. The colloquy as to forfeitures in the cited case had little to do with our finding of prejudice. With regard to defense counsel's approval of the instruction, we stated in *Brousseau:*

". . . The record indicates confusion and misunderstanding by the law officer, trial counsel, and defense counsel on the law in this area as contained in those [above-cited] cases. This is reflected in the affirmative misinstructions on forfeitures." [*Id.,* at page 626.]

█ We will not speculate on what sentence a properly instructed court might have returned. In light of the extensive inquiry by the court members concerning the discharge, as noted above, and under the circumstances of this case, we believe that a rehearing on sentence is in order.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing on sentence may be ordered.

Chief Judge DARDEN and Judge QUINN concur.

## APPENDIX

Military Judge's Guide, Department of the Army Pamphlet No. 27–9, May 19, 1969, chapter 8, paragraph 4.

*"e. Clemency.*

"You are reminded that it is your independent responsibility to adjudge an appropriate sentence for the offense(s) of which the accused has been convicted in accordance with the instructions on sentence which I have previously given. However, if any or all of you wish to make a recommendation for clemency, you are advised that it is within your authority to do so at any time after the sentence is announced. In making such recommendations, however, you should keep in mind your responsibility to adjudge a sentence which you regard as fair and just at the time it is imposed and

not a sentence which will become fair and just only if the mitigating action recommended in your clemency request is adopted by the convening or higher authority. Such reliance upon the mitigating action of higher authority is improper and constitutes an abandonment of your responsibility, for the convening or higher authority is in no way obligated to accept your recommendation.

"You are further advised that a recommendation for clemency by the court which is based upon the same matters which provide the basis for the sentence must be consistent with each part of the announced sentence. In this regard you are advised that a recommendation by the court for an administrative discharge or disapproval of a punitive discharge, if based upon the same matters as the sentence, is inconsistent with a sentence to a punitive discharge as a matter of law. However, if there are different bases for the sentence and such a recommendation for clemency, apparent inconsistency must be eliminated by making the court's recommendation expressly dependent upon such mitigating factors as (the) (attitude) (conduct) (health) (restitution) (of) (by) the accused after the trial and before the convening authority's action.

"You are further advised that, although you have no authority to adjudge suspension of a punitive discharge as part of your sentence, you may recommend such suspension. However, you must keep in mind in deliberating on the sentence that such a recommendation will in no way be binding on the convening authority or higher authority; therefore, before you adjudge a punitive discharge you must be satisfied that it is appropriate punishment even if the convening or higher authority refuses to adopt your recommendation for suspension."