**UNITED STATES**

v.

**Derrick V. KING Airman 361 46 1588**
**U. S. Navy.**

**NCM 74 3362.**\*

U. S. Navy Court of Military Review.

10 Sept. 1975.

* Consult Table of Cases in Bound Volume by Name of Accused for appellate history.

LT Stephen T. Myking, JAGC, USNR, Appellate Defense Counsel.

LT Thomas L. Earp, JAGC, USNR, Appellate Government Counsel.

## DECISION

FULTON, Judge.

Contrary to his plea the appellant was convicted of larceny of a Sony television from a fellow enlisted man in violation of Article 121 UCMJ, 10 U.S.C. § 921. The sentence approved below provides for a suspended bad conduct discharge, confinement at hard labor for two months, and reduction to pay grade E–1.

Appellant contends the following prejudiced his cause:

I. THE STAFF JUDGE ADVOCATE'S REVIEW IS PREJUDICIALLY INADEQUATE.

II. THE PUNITIVE DISCHARGE SHOULD BE DISAPPROVED IN THAT THE COURT MEMBERS IMPEACHED THAT PORTION OF THE SENTENCE AWARDING THE DISCHARGE.

### I

### REVIEW

The evidence in this case presented an obvious credibility conflict and the questions is whether the review fairly described the choices (prosecution and defense evidence) available to the supervisory authority and accurately stated the standard of proof. In summary the evidence indicated the television was stolen about 1630, (R 46–55). Petty Officer Laynette Sykes, USN, testified that she bought the television in question from appellant at about 1730–1800 (R 61–62). Appellant and Mr. Moreria testified that they went to the Sykes' apartment to collect a loan and did not have a television. According to them the $15 check from Petty Officer Sykes was repayment of this loan (R 97–103, 139–141). Appellant denied stealing the set or selling it.

The review accurately presented the pleas and findings. The evidence presented was summarized and the elements of larceny were tailored to fit the specification. Thereafter, the review contained the following:

a. There is testimonial evidence that the television disappeared from MOTES' room in a fifteen-minute period while the room was unoccupied and unlocked. MOTES' has also testified that he did not loan the television to anyone. Further, there is the testimony of SK3 SYKES that, within a short time thereafter, KING arrived at her apartment with the television. (This testimony is controverted by that of the accused and of MORERIA);

b. There is testimony from MOTES showing that he purchased the television;

c. There is testimony from MOTES, substantiated by his receipts, that he paid $120.00 for the television a few months before it was stolen;

d. The testimony of SK3 SYKES tends to prove that KING sold her the television which, if believed, raises a strong inference of intent to permanently deprive.

Since there is at least some evidence on each and every element of the offense, the evidence is sufficient to support the findings of the members *as a matter of law.* Your attention is directed, however, to the fact that there is substantial controversy as to at least *two* elements of the offense. This controversy is raised by the accused's testimony denying the offenses which may be supported by testimony of the other defense witnesses. In your capacity as supervisory authority you may approve only those findings wherein you find, *upon independent evaluation,* that each and every element is proven by the evidence beyond a reasonable doubt.

The review expressed the opinion that the "evidence supports the findings and established, beyond a reasonable doubt, the guilt of the accused of the offenses of which he was convicted." The supervisory authority was lastly advised:

"You must determine that a finding of guilty is established to your satisfaction, beyond a reasonable doubt, before approving such finding."

■ We agree with appellant that the portion of the review is erroneous which provides:

"Since there is some evidence on each and every element of the offense, the evidence is sufficient to support the findings of the members *as a matter of law.*"

We will assess this error for prejudice within the four corners of the review.

Appellant contends that he was prejudiced by the failure to rationalize the evidence and failure to "state why Government witnesses should be believed at the expense of appellant." The Manual for Courts-Martial, 1969 (Revised Edition) provides in paragraph 85*b.*, *inter alia* :

. . . The review will include a summary of the evidence in the case, his opinion as to the adequacy and weight of the evidence and the effect of any error or irregularity respecting the proceedings, and a specific recommendation as to the action to be taken. Reasons for both the opinion and the recommendation will be stated. . . .

■ Important testimony relating to key issues must be summarized in the review. *United States v. Nelson,* 23 U.S.C.M.A. 258, 49 C.M.R. 433 (1975). The summary "must not be one-sided or so deficient as to present a fair risk of prejudice to the accused." *United States v. Hooper,* 11 U.S.C.M.A. 128, 28 C.M.R. 352 (1960). The supervisory authority must be provided with adequate guide posts to determine appellants innocence or guilt. *United States v. Smith,* 29 U.S.C.M.A. 98, 48 C.M.R. 659 (1974).

We find that the summary of the evidence fairly presented the conflicting testimony of the witnesses for the defense and prosecution. The key issues were virtually spelled out in the summary. The conflicts were clear cut and it appears unlikely the supervisory authority was misled as to the state of the evidence or the choices available. *Cf. United States v. Hooper, supra.*

Was the supervisory authority misled as to the standard of proof required to sustain the guilty finding? The Defense argues that the review suggested that "some" evidence could support the findings of guilty.

We agree that this is what the review suggests. *Cf. United States v. Monahan*, No. 30, 344 (U.S.C.M.A. 29 August 1975). However, in context with the rest of the review, we find no prejudice. After this incorrect language, the review thrice emphatically states that the standard of proof is reasonable doubt. Under these circumstances, we conclude that it is highly unlikely the supervisory authority was misled on such a basic matter as the standard for judging guilt. The assignment lacks merit.

## II

### SENTENCE

After complete findings instructions including advice on clemency and administrative discharges, the Court closed to deliberate on the findings. Thereafter the Court opened and the president requested additional guidance on the form of "a possible recommendation by the Court for clemency" and "a chart for reduced VA benefits associated with a bad conduct discharge." The Court was provided with the chart and without objection instructed on recommendations for suspension of a punitive discharge.

The Court was twice told by the military judge that higher authority would not be bound by their recommendation and that reliance on mitigating action by higher authority would be improper and "constitutes an abandonment of your responsibilities." After questions from the Court, the military judge instructed:

"... before you adjudge a punitive discharge, you must be satisfied that it is appropriate punishment, even if the convening or higher authority refuses to adopt your recommendation for suspension."

Appellant argues that the Court members impeached that portion of the sentence providing for a bad conduct discharge. Called into question is the following trial occurrence:

Your Honor, the court has a recommendation for clemency.

MJ: Do you desire to announce that now?

PRES: Yes, sir.

MJ: Proceed.

PRES: Your Honor, it's the feeling of this court in sentencing Airman King that we have two duties to perform; first, to see that Airman King is punished for the offenses of which the court has found him guilty; secondly, but to see that this 22-year old does not carry the brand of his misconduct in the past for the rest of his life—for this reason the court would recommend that upon completion of his confinement sentence the bad conduct discharge be reduced to an administrative discharge in the hopes that when Airman King is released from the Navy he can start a second life.

MJ: It is your recommendation to the Convening Authority and the Reviewing Authority that upon completion of the accused's service of confinement at hard labor that the punitive discharge then be reduced?

PRES: That's correct.

MJ: That it be reduced to an administrative discharge and the accused be released from the service, or at the end of his obligated service?

PRES: Released from active duty upon completion of his sentence.

TC: Your Honor, if I may interrupt—is that a recommendation for remission rather than suspension?

MJ: That it is. The court is adjourned. (R 252)

We recognize the general rule that ordinarily the military judge should not instruct on clemency recommendations and administrative discharges. *United States v. Kaylor*, 10 U.S.C.M.A. 139, 27 C.M.R. 213 (1959); *United States v. Story*, 10 U.S.C.M.A. 145, 27 C.M.R. 219 (1959); *United States v. Grcich*, 10 U.S.C.M.A. 495, 28 C.M.R. 61 (1959); *United States v. Pope*, 17 U.S.C.M.A. 156, 37 C.M.R. 420 (1967).

Nevertheless the military judge instructed:

"You are reminded that it is your independent responsibility to adjudge an appropriate sentence for the offenses of

which the accused has been convicted in accordance with the instructions on sentence I have previously given. However, if any or all of you wish to make a recommendation for clemency, you are advised that it is within your authority to do so at any time after the sentence is announced. In making such recommendations, however, you should keep in mind your responsibility to adjudge a sentence which you regard as fair and just at the time it is imposed and not a sentence which will become fair and just only if the mitigating action recommended in your clemency request is adopted by the convening or higher authority. Such reliance upon the mitigating action of higher authority is improper and constitutes an abandonment of your responsibilities, for the convening or higher authority is in no way obligated to accept your recommendation."

"You are further advised that a recommendation for clemency by the court which is based upon the same matters which provide the basis for the sentence must be consistent with each part of the announced sentence. In this regard, you are advised that a recommendation by the court for an administrative discharge, or disapproval of a punitive discharge adjudged by the court, if based upon the same matters as the sentence, is inconsistent with a sentence to a punitive discharge as a matter of law." (245–246)

In *United States v. Lindsey*, No. 74, 3113 (N.C.M.R. 30 June 1975) another panel of this Court said "a court-martial may recommend an administrative discharge or *after trial* recommend that an administrative discharge be substituted for a bad conduct discharge." In *United States v. Keith*, 22 U.S.C.M.A. 59, 46 C.M.R. 59 (1972) the Court of Military Appeals stated:

"Under the circumstances of this case, we believe that the military judge erred in failing to inform the court of the conditions under which they could, after announcement of sentence, recommend an administrative discharge, disapproval of

the adjudged punitive discharge or suspension of the latter."

We distinguish *United States v. Kaylor, supra*, on its facts because no instructions on findings were given in that case. In *United States v. Pope, supra*, the court "could not determine whether the court-martial members properly understood their sentencing power; that is that they need not have adjudged a punitive discharge in the first place" 17 U.S.C.M.A. at 157, 37 C.M.R. at 421. The facts of this case are similar to the *Grcich* case, *supra*, but we believe *Keith, supra*, has modified the *Grcich* rationale that a recommendation for an administrative discharge impeaches a sentence to a punitive discharge. In *United States v. Turner*, 14 U.S.C.M.A. 435, 34 C.M.R. 215 (1964), decided after *Grcich*, the Appeals Court stated the trial court could logically include in their reasons for the sentence [1] "a recommendation for some sort of administrative action as to the accused." The Court there recognized that the triers of fact might misunderstand the full scope of their sentencing powers citing *Kaylor* and *Grcich* both *supra*. The *Turner* court concluded:

But the concurrence of sentence and recommendation need not necessarily be the product of confusion or misunderstanding. If the record of trial shows the court-martial understood the relationship of the recommendation to the sentence adjudged, there is no reason to question either the sentence or the recommendation. 14 U.S.C.M.A. 439, 34 C.M.R. 219

Thus in *Keith* the Court was able to conclude that under certain circumstances the military judge should, instruct the Court on the conditions under which they could, after sentence, recommend administrative discharge, disapproval of the adjudge punitive discharge or suspension of the latter.

■ We wish to make it clear that *Keith* is an exception to the general rule, and that military judges would do well to steer clear of this judicial shoalwater. We believe the facts of the case *sub judice* are sufficiently

1. See MCM 1951, par. 765(4).

close to the *Keith* exception. Once instructed on administrative discharges it is not surprising that the Court concerned itself with administrative matters. The Court was clearly told that higher authority would not be bound by their recommendations and it is likewise clear that the Court knew they could only recommend an administrative discharge. The Court was not confused or misled. The Court "understood the relationship of the recommendation to the sentence", *United States v. Turner, supra*. Under these circumstances we find that the bad conduct discharge was not impeached by the recommendation that an administrative discharge be eventually substituted therefore. The assignment is without merit.

The findings and sentence approved below are affirmed.

MALLERY, Judge, concurs.

EVANS, Senior Judge (dissenting).

I would return the record for another post-trial legal review. Other than making a statement that the evidence established guilt beyond a reasonable doubt the Staff Judge Advocate "did not enter the appellate arena and 'wrestle' with the evidence." *United States v. Gadson*, No. 74 1820 (N.C.M.R. 1974) slip opinion page 2. The inferences to be drawn from the exchange of money between witness Sykes and the accused were not clear cut. It was the obligation of the staff judge advocate to balance the permissible inferences that could be drawn from this evidence. *United States v. Hooper loc. cit.* pages 130, 354. Where crucial evidence points to guilt or innocence the staff judge advocate should "rationalize the equivocal evidence in a manner so the various conflicting permissible inferences can be weighed and 'balanced' by the reviewing authority. . . . When this is done the staff judge advocate then may give his reasons why he chooses to resolve the conflict to the benefit of the Government.", *United States v. Frye*, No. 74 1555 (N.C.M.R. 1974), *petition denied* No. 29,653 (U.S.C.M.A. 21 March 1975) and *United States v. Bullock*, No. 75 0992 (N.C.M.R.

May 1975). Chief Judge Darden stated in *United States v. Cruse*, 21 U.S.C.M.A. 286, 288, 45 C.M.R. 60, 62 (1972):

"When disputed questions of fact cause a bare statement of the evidence not to point unerringly to guilt, a staff judge advocate should furnish reasoning supporting a conclusion." [Compare *United States v. Smith*, 23 U.S.C.M.A. 98, 48 C.M.R. 659 (1974)]

Following the reasoning in *Cruse* I would find the post-trial legal review to be inadequate.

Had the legal review been adequate, I would concur in Judge Fulton's disposition of the second assignment of error.