UNITED STATES, Appellee

v.

Derrick D. WEATHERSPOON, Private
U.S. Army, Appellant.

No. 94–1026.
CMR No. 9200303.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 3, 1995.

Decided July 30, 1996.

For Appellee: *Captain Stanley M. Bell* (argued); *Colonel Stephen D. Smith, Lieutenant Colonel John T. Rucker, Major Roy H. Hewitt* (on brief); *Captain Teresa L. Norris* and *Captain Michael E. Hatch.*

For Appellant: *Colonel John M. Smith* (argued); *Lieutenant Colonel James L. Pohl, Captain Michael E. Mulligan, Captain Kenneth G. Wilson* (on brief).

*Opinion of the Court*

COX, Chief Judge:

Contrary to his pleas, appellant was convicted by a general court-martial at Fort Hood, Texas, of premeditated murder and breaking restriction, in violation of Articles 118 and 134, Uniform Code of Military Justice, 10 USC §§ 918 and 934, respectively. Thereafter, the members sentenced appellant to a dishonorable discharge, life imprisonment, and total forfeitures. The convening authority approved the sentence but suspended all confinement in excess of 50 years for 1 year. In an unpublished opinion, the Court of Military Review[1] affirmed.

█ This. appeal asks us to define the dimensions of an accused's right to have court members articulate their recommendation of clemency to the convening authority. We are asked to do so in the context of an issue questioning the correctness of the military judge's instructions to the members that, if they wanted to make such a recommendation at the time of announcing the sentence, three-fourths of them must vote to do so. 42 MJ 415 (1995).

1. *See U.S. v. Loving,* 41 MJ 213, 229 n. * (1994).

## I

Nine minutes after court had closed so that the members could deliberate on their sentence, they returned to ask: "The question is, must we impose confinement for life or must we merely vote for life?" The following colloquy ensued:

MJ: Well, you must vote for a sentence that includes confinement for life. You have no choice with respect to that.... [T]he court cannot reach a sentence unless seven [of the nine] members concur and that must include confinement for life. Now, you have no choice with respect to that. You may do this. You may, after imposing a sentence which includes confinement for life, collectively, or after the trial, individually, recommend to the convening authority that the confinement be reduced to another number, whatever it is. You can recommend clemency with respect to the confinement. Well, actually you can always recommend clemency, but you can't do it—I don't want to confuse you. Let me talk about confinement and everything I say applies to confinement. *The bottom line is, you must vote for a sentence which includes confinement for life. You can, as a court, collectively or individually, recommend clemency with respect to that length of confinement.*

PRES: *And how would we record that?*

MJ: You may announce that the court recommends that the convening authority only approve—*after you announce the sentence you can also say, "The court recommends that the convening authority approve a certain amount of years."* I assume that's what you're thinking about. *Or you could, individually after the trial either approach the convening authority, approach the defense counsel, approach the SJA, to record your individual views.* That's permissible in this case because of the mandatory nature of the sentence.

PRES: *If we have four people that decide that they recommend clemency, how do we record that, or do we?*

MJ: *You may do it together and send a letter to the convening authority, approach him individually, approach the Staff Judge Advocate, approach the defense counsel, any number of ways.*

PRES: I'm still not clear. If four people, after we—during deliberations, four people say, I'll recommend clemency. *Do we come back to you and record that in this document* [holds up Appellate Exhibit XLVIII—(sentence worksheet) ] *or is that done outside of this courtroom on another time and place?*

MJ: If less than seven [of the nine] members of the court are recommending clemency, or at least seven can agree on the degree of clemency, *you can write a letter to the convening authority, you can write a letter to the SJA, you can talk to the defense counsel, call him up and talk to him. You can talk to the trial counsel, through any number of ways like that. You can put it in writing, together the four of you. You can meet in your office this afternoon and talk about it, or anything like that. You know, any way that you would—could get a message through to the convening authority.*

(Emphasis added.) Defense counsel stated he had no objection to this instruction.

In due course, the members returned with the sentence indicated earlier, without a recommendation for clemency. The sentence worksheet reflects the following handwritten notation: "Court has chosen not to address clemency because less than seven members wanted to." App.Ex. XLVIII. It is apparent that the words "only 4 members" were written in, and then stricken out after "because," and replaced by the current language. After trial, three of the members, in fact, did write the convening authority to recommend clemency, and a fourth wrote to recommend against clemency.

## II

In considering whether the above-quoted instructions were plainly erroneous, *see United States v. Toro*, 37 MJ 313 (CMA 1993), *cert. denied*, 510 U.S. 1091, 114 S.Ct. 919, 127

L.Ed.2d 213 (1994); *United States v. Fisher*, 21 MJ 327 (CMA 1986), we note that the granted issue logically presents three questions: First, does an accused have any right to a collective recommendation by the members for clemency, to be announced contemporaneously with the sentence? Second, if so, what vote is required for such a collective recommendation? Finally, in light of answers to these questions, is there a "reasonable likelihood" that the members applied these instructions in an impermissible and prejudicial manner? *See generally Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Our standard of review is de novo. *See* S. Childress & M. Davis, Standards of Review § 2.13 (1992).

From this Court's earliest days, we recognized that a court-martial does not have the power to adjudge a suspended sentence. *United States v. Marshall*, 2 USCMA 342, 8 CMR 142 (1953). Nonetheless, "[i]t has long been the practice in the military service for courts-martial to make recommendations of clemency to reviewing authorities." *United States v. Doherty*, 5 USCMA 287, 291, 17 CMR 287, 291 (1954). This Court even has commented that "it is a practice which must be encouraged" in light of the court-martial's legal inability, itself, to suspend any or all of a sentence. *Id.*

Although not entirely clear, it appears that the legal basis for this early-recognized right of a court-martial to recommend clemency might have been the following language found in paragraph 76*b* (4), Manual for Courts–Martial, United States, 1951:

> For the information of the convening authority—but not as a part of the sentence itself—the court may formulate for inclusion in the record a brief statement of the reasons for the sentence.

*See United States v. Turner*, 14 USCMA 435, 439, 34 CMR 215, 219 (1964). *See generally* Art. 36(a), UCMJ, 10 USC § 836(a) (authority of the President to promulgate rules of procedure). It is also possible that the legal basis might have been paragraph 77*a* of the 1951 Manual. That provision specifically addressed the right of defense counsel, after

sentence has been announced, to "submit in writing for attachment to the record any matters as to clemency which it [the defense] desires to have considered by the members of the court or the convening authority"; as well, it provided for "a recommendation for clemency by individual members of the court," even for a single recommendation expressed by individuals joining together. *See United States v. Keith*, 22 USCMA 59, 62–63, 46 CMR 59, 62–63 (1972); *United States v. Turner, supra* at 439, 34 CMR at 219.

Although language similar to paragraph 76*b* (4) did not appear in subsequent versions of the Manual for Courts–Martial, that of paragraph 77*a* did continue to appear, and this Court also continued to acknowledge a collective right of a court-martial to recommend clemency. *See, e.g., United States v. Keith, supra.* Moreover, the 1995 amendments to the Manual now instruct that one of the mandatory components of the staff judge advocate's written recommendation to the convening authority is "[a] recommendation for clemency by the sentencing authority, made in conjunction with the announced sentence." RCM 1106(d)(3)(B), Manual for Courts–Martial, United States (1995 edition); *see* Manual, *supra* at A25–27 (1995 ed.).

■ All said, we conclude that, for over 4 decades, the President has provided for, and this Court has recognized, the power of a court-martial to recommend clemency to the convening authority, contemporaneously with announcement of the sentence. The President has not altered his course; neither shall we.

What is wholly unaddressed, as far as we can tell, is the question of the vote that is required in order to make such a recommendation. One possibility is the same percentage that is required to adjudge the sentence, *see* RCM 1006(d)(4), Manual, *supra* (1995 ed.). This alternative is not a compelling one, however, since both the Manual provisions and this Court's opinions steadfastly have made clear that a recommendation for clemency is not a *part* of the sentence. Moreover, the rationale that supports an increasing percentage of votes for

an increasing severity of a sentence would not necessarily seem to support a similar formula relating to clemency recommendations. Another possibility is a simple majority—a rationale that might be supported to some extent by the absence of any other provision whenever reference is made in the Manual or this Court's opinions to "a court-martial." Other possibilities, too, might suggest themselves.

In the absence of a Presidential decision reflected in the Manual, this Court might have to provide an answer in an appropriate case.[2] This one, however, is not such a case. Nothing anywhere in the record suggests that any more than four members ever considered recommending clemency, and ultimately only three did so post-trial in their individual capacities. With nine members sitting, a bare majority of five members—which would seem to be the least that would be required to satisfy references to "a court-martial"—would have been necessary in order for the court-martial to make a collective recommendation.

Accordingly, there is no reasonable likelihood that the military judge's instruction that seven members would have to agree on a recommendation was impermissibly applied to appellant's prejudice. Further, the military judge repeatedly made clear to the members their individual rights to recommend clemency, and three of them did so. In this context, there is no plain error, if error at all.

### III

The decision of the United States Army Court of Military Review is affirmed.

Judges CRAWFORD and GIERKE and Senior Judge DARDEN concur.

2. Without authoritative guidance in this area, a military judge situated like the one in this case literally is out on a limb alone: The judge has members who raise the issue and ask for instruction on its resolution, yet the judge has no basis for providing such instruction and is left to devise one ad hoc. We urge the drafters of the Manual for Courts–Martial, in their periodic review of the Manual, to consider recommending to the President an amendment to an appropriate Rule for Courts–Martial that will address such presently open questions as these:

SULLIVAN, Judge (concurring in the result):

The practice of court-martial members making recommendations concerning the sentence to reviewing authorities is long established. See C. Clode, *The Administration of Justice Under Military and Martial Law* 166 (1874). Colonel Winthrop commented on it as follows:

**Recommendation.** Where a severe sentence, made imperative by a mandatory provision of the code, has been adjudged by the court, or-though more rarely-where a severe discretionary sentence has been imposed, the members, or a portion of them, sometimes join in a *recommendation, i.e.,* a written statement commending the accused, for reasons stated, to the clemency of the reviewing authority.

This statement is not a proceeding of the court, and no part of the record of the trial. It is therefore not properly incorporated with or added to the sentence, but, in practice, is usually appended to the record as a separate paper. It may indeed form the subject of a distinct official communication to the reviewing commander or pardoning power, and this is the form which it usually takes in the French and German procedure.

*Being the act, not of the court, but of the members who take part in it, the recommendation may be subscribed by all the members, or by a majority or minority, or by one member only.* There may be two or more recommendations, signed by different members, and on different expressed grounds. The judge advocate may properly join in a recommendation.

(a) What percentage of the members of a court-martial must support a recommendation for clemency before it becomes the recommendation of "the court-martial"?

(b) Need there be a recommendation of "the court-martial," or, instead, should they simply announce the number who support the recommendation (*e.g.,* "The court-martial unanimously recommends ...."; or, "A majority of the court-martial recommends ...."; or, "Three members of the court-martial recommend...."")?

A recommendation should not omit to state the reasons upon which it is based. Among the grounds generally advanced have been-the previous military services of the offender, his general good character, his youth or inexperience, the fact·that he has been held for an unusual period in arrest or confinement awaiting trial, or that he is in infirm health, the absence in his case of a deliberate criminal intent, & c. A recommendation should proceed upon *facts*—mainly or entirely upon facts in evidence on the trial. It should not be actuated by the personal feelings of the members, whether feelings of partiality toward the accused or of disfavor toward the prosecutor. It should of course not disclose opinions on the question of guilt or innocence. Further, it should not assume to dictate, or to suggest, to the reviewing authority what mode or measure of clemency will properly be resorted to in the case.

It seems to be the sentiment of the authorities that recommendations are not much to be encouraged. They have indeed been characterized in some instances rather by a weakly lenient or temporizing spirit than a sound appreciation of the circumstances or merits of the case; in others they have been so materially inconsistent with the findings and sentence as to detract materially from their weight. In a proper case, however, a recommendation, especially if signed by all the members, will be duly deferred to, as being in effect a qualification of the sentence.

W. Winthrop, *Military Law and Precedents* 443–44 (2d ed. 1920 Reprint) (footnote omitted; emphasis added in 3d paragraph).

In this light, I conclude that the military judge's instructions requiring a majority or higher vote for such a recommendation were erroneous. Nevertheless, I note that defense counsel did not object to these instructions. *See* RCM 1005(f), Manual for Courts–Martial, United States, 1984. Moreover, appellant's prejudice argument, based on the timeliness of the members' later submissions and defense counsel's role in soliciting them, is not persuasive. I also see no prejudicial error in this case.