UNITED STATES, Appellee

v

WINFIELD CLECKLEY, Jr., Private E-1,
U. S. ARMY, Appellant

8 USCMA 83, 23 CMR 307

No. 9335

Decided June 21, 1957

*First Lieutenant David N. Gorman* argued the cause for Appellant, Accused. With him on the brief was *Captain John F. Christensen.*

*First Lieutenant Arnold I. Burns* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton,* and *First Lieutenant Peter J. Hughes.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused pleaded guilty to having deserted the Service from August 6, 1952, to July 7, 1956. He elected to testify in mitigation and extenuation, and he sought to explain his absence by relating conditions at home which, in substance, proved illness to his wife and hardship to his family. Apparently the members of the court-martial were influenced by his difficulties for, in spite of four previous convictions, they sentenced him to a dishonorable discharge, confinement at hard labor for one year, and forfeiture of $28.80 per month for the same period of time. In his petition for review to this Court, he contends the sentence as imposed by the court-martial is inconsistent and that subsequent reviewing authorities erred in not modifying certain portions to cure the ambiguity. We granted the petition for review, and in our order we limited briefs and arguments to three issues. However, because of our conclusion that the sentence is legal, proper, and not inconsistent within its own terms, we find no requirement placed on the law officer or higher authorities compelling them to act as contended for in the second and third issues. Therefore, we eliminate any discussion of the last two questions and direct our remarks to the single contention that the sentence has mutually inconsistent provisions as a matter of law, and the conflict must be resolved in favor of the accused.

The sentence on its face is in all respects legal and regular. However, the accused seeks to support █ his claim of irreconcilable conflict by contending that the court-martial indicated an intent to keep the accused in a pay status when it ordered only a partial forfeiture of pay, but, because of the operation of another Federal statute, the imposition of the dishonorable discharge prevented the accrual of pay and allowances and the desired intent is defeated.

The Uniform Code of Military Justice provides that a person convicted of desertion may be punished as a court-martial may direct, and the only limitation on that power to punish is found in the Table of Maximum Punishments in the Manual. In addition to the power conferred by the punitive Articles, the Code has two Articles which are relevant. Article 18 provides:

". . . general courts-martial . . . may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this chapter, including the penalty of death when specifically authorized by this chapter."

Article 19 is as follows:

". . . Special courts-martial may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this chapter except death, dishonorable discharge, dismissal, confinement for more than six months, hard labor without confinement for more than three months,

forfeiture of pay exceeding two-thirds pay per month, or forfeiture of pay for more than six months. A bad-conduct discharge shall not be adjudged unless a complete record of the proceedings and testimony before the court has been made."

In imposing the sentence in this instance, the court-martial stayed well within its limits and, as a matter of fact, one portion of the sentence was relatively light for, instead of forfeiting all pay and allowances, the court-martial provided for forfeiture of only $28.80 per month. Strangely enough, it is the generosity of the court-martial in that regard which creates the question raised by the accused.

To support his hypothesis that there are mutually inconsistent parts in the sentence, accused must go beyond the Uniform Code and call to his assistance the Act of Congress of August 10, 1956, 70A Stat 208, 10 USC § 3636, which provides:

"*Enlisted members: pay and allowances not to accrue during suspended sentence of dishonorable discharge.* Pay and allowances do not accrue to an enlisted member of the Army who is in confinement under sentence of dishonorable discharge, while the execution of the sentence to discharge is suspended."

The predecessor statute of the one quoted above was the Act of March 4, 1915, 38 Stat 1065, 10 USC § 876, and it provided:

". . . That hereafter pay and allowances shall not accrue to a soldier under sentence of dishonorable discharge, during such period as the execution of the sentence of discharge may be suspended under authority of the Act of Congress approved April twenty-seventh, nineteen hundred and fourteen, . . ."

It is to be noted the first quoted statute which was in effect at the time this sentence was imposed modifies the earlier act slightly, for it denies the accrual of pay and allowances only during confinement. However, it is clear from both statutes that the purpose of the law is to impose a limitation upon the expenditure of funds by fiscal agents of the Government. The question then becomes simply whether a fiscal act can be used as a basis for impliedly reading into the Uniform Code inconsistencies which have for their effect the repealing of the specific delegation of power to courts-martial to impose any sentence not forbidden by law.

We find no reason why we should interpret the financial statute in derogation of the power of a court-martial. On the contrary, we need not deal with that Act at all, for all we need say is that the authority of a fiscal agent of the Federal Government acting under a separate law to pay or not to pay the accused is a matter which cannot be tossed into military law to befuddle sentences authorized by the Code. Certainly, we are not disposed to interpret the financial statutes to restrict the power of a court to sentence as authorized by military law and, unless we go that far, there is no inconsistency in this sentence.

To reach a contrary conclusion would throw the whole system of sentencing in military courts out of balance. The law is, and has been for many years, to the effect that courts-martial could impose punitive discharges together with partial forfeitures of pay and allowances. Certainly, all military authorities, and this Court since its inception, have acted on the assumption that the power to impose sentences of that kind has been delegated to military courts by Congress. The Uniform Code of Military Justice prescribes the complete system of military justice in the Armed Services, and it should not be emasculated by statutes which deal with the financial and civil rights of those convicted of offenses unless the Act relied on for amending purposes discloses a clear Congressional intent to modify the Code. No such intent can be found in the questioned legislation, and invalidity by implication should be avoided. In this instance, the canons of statutory construction can be employed to establish that the Code has been left untouched, and for us to read into the law a limitation on the sentencing power of military courts for the reasons advanced would be contrary to what we

believe to be the intent of Congress. In addition, undesirable results not anticipated by the lawmakers would result. Great difficulty would be encountered because courts-martial would be circumscribed by all fiscal legislation, and many sentences would be vulnerable to attack if some law in the civil field was found which appeared to be at variance with the intent of the court-martial. To retain that which is necessary to an orderly system, we prefer to rely on the provisions of the Code and hold that the power of the court-martial to render those sentences authorized by the Code and the Manual is not impaired by the fiscal Act herein referred to.

One other argument bears answering. Defense counsel assert that, regardless of the authority of the ■■■■■■■ court-martial to assess this sentence, under the doctrine of United States v Flood, 2 USCMA 114, 6 CMR 114, it is inconsistent on its face and it should be modified by some authority possessed of the power to deal with the appropriateness of sentence. Obviously, the argument takes the approach that the punitive discharge provision must be deleted from the sentence so as to make it possible for the accused to remain in a pay status, and it is bottomed upon the premise that the court-martial intended to keep him in a pay status for one year and the execution of the discharge before that time will defeat the assumed intent. The short answer to that is that we find no such intent expressed or implied in the sentence. We assume the court-martial intended to separate the accused from the Service and that the partial forfeitures were imposed so that his family might obtain some assistance until such time as he was returned to civilian life. It would be contrary to sound judgment to conclude the court-martial intended to separate him from the Service with a dishonorable discharge but to require the Government to retain him in the Service for one year so he could be paid for that period of time. The sensible construction of the sentence is that the provision forfeiting the named sum was conditioned on the period of incarceration

with the understanding that the law on execution of sentences would take its ordinary course.

Our attention has been called to the case of United States v Qualls, CM 392121, in which an Army board of review reached a contrary result. However, in United States v Scott, CM 392208, and the present case, boards of review refused to follow the rule laid down. As indicated above, our views are in keeping with rationale of the latter, and we, therefore, affirm the decision of the board in this instance.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

It is axiomatic that statutes on the same subject matter must be considered together. Accordingly, I ■■■■■■ ■ do not share the implied view that if the provisions of Section 3636, Title 10 of the United States Code, are in conflict with the Uniform Code of Military Justice, the conflict must be decided in another forum. It is the responsibility of this Court to review the issues of law which affect the legality of the accused's conviction and his sentence.

Congress has always provided for the amount and conditions under which pay and allowances are granted to military personnel. It has also provided for the imposition of forfeitures by the sentence of a court-martial. See United States v Landers, 92 US 77, 23 L ed 603 (1876); Ex parte Mason, 105 US 696, 26 L ed 1213. Before 1914, in a case in which an enlisted accused was sentenced to a dishonorable discharge and confinement, it was the usual practice to execute the discharge so as formally to separate the accused from the Army before he entered upon the service of his confinement. To accomplish that result, the sentence of the court-martial normally provided that the accused be discharged with forfeiture of his pay and allowances and *then confined.* See ex parte Mason, supra; Winthrop, Military Law and Precedents, 2d ed, 1920 reprint, pages 403–4. In such cases, the sentence became final and was carried into execution immediately upon approval by the officer who convened

86

the court. Under existing law, the reviewing authority was empowered to "pardon or mitigate" the punishment adjudged by the court-martial, but he had no authority to suspend execution of the whole or any part of the sentence. Articles of War 104, 105, 109, 112. Cf. Article of War 111 (relating to a sentence of death or to the dismissal of an officer). This situation was changed by the Act of April 27, 1914, 38 Stat 354. By that act, the reviewing authority was authorized to suspend the execution of a dishonorable discharge until the accused's release from confinement.

Some months after the 1914 act, a question arose as to the effect of the suspension of the discharge on the forfeitures that were adjudged as part of the sentence. The Judge Advocate General of the Army ruled that the suspension of the discharge left the accused entitled to pay during the period of his confinement. He, therefore, recommended that the form of the sentence to forfeitures be changed to read: "To forfeit all pay and allowances due or to become due while undergoing confinement in pursuance of this sentence." Dig Op JAG 72–214, 1912–1917, page 428. Shortly thereafter, the Comptroller of the Treasury agreed with this ruling "because the sentence to dishonorable discharge to which forfeiture was an incident was not yet effective by reason of suspension during confinement." The Comptroller went on to say that when, after the suspension, there is execution of the dishonorable discharge, it "carries with it" forfeiture of all pay, including that earned in confinement. In my opinion, Congress intended to settle the ramifications of this problem by the Act of March 4, 1915, 38 Stat 1065. By that act it provided that *"hereafter* pay and allowances shall not accrue" while the soldier is under a suspended dishonorable discharge. Thus, Congress changed the situation from one of forfeiture of pay earned to one of no pay. It thereby eliminated a useless formality. It no longer required that the accused be credited with pay during the period of suspension, that the pay be kept separate until the end of the suspension, and that it

then be returned to the Treasury as a forfeiture upon execution of the discharge. Cf. Dig Op JAG 251, April 1918, page 21.

Common sense indicates that when no pay is earned, there can be no forfeiture of pay. It can, therefore, be argued that the one is not necessarily incompatible with the other. See 25 Comp Gen 26; 24 Comp Dec 621, cited in Dig Op JAG, May 1918, page 74; Dig Op JAG 250.4, August 1918, page 169. However, when both a nonpay status and a forfeiture of pay result from the same sentence, it seems to me that the two are so inextricably interwoven as to require consideration as a single unit.

In an appropriate case, a court-martial must, in my opinion, be advised that, if it adjudges a dishonorable discharge and confinement, the accused is no longer entitled to any pay. Only then can the court know that a determination to adjudge partial forfeitures, and thus preserve for the accused part of his pay until his separation from the service, can have no effect. Only then can the court know that partial forfeitures are, for all practical purposes, inoperative when coupled with a dishonorable discharge and confinement. Of course, the reviewing authority can later disapprove or remit the discharge, restore the accused to a pay status, and thereby give effect to the court-martial's determination of partial forfeitures. However, a court-martial cannot predicate its sentence upon speculation as to what the reviewing authority will do. It must base its decision upon the law and the facts presented to it in open court. And, if the instructions it receives are inadequate, it cannot make an intelligent determination of an appropriate sentence.

Here, the accused made a strong case for the imposition of less than total forfeitures. His entire effort was doomed to failure unless the court-martial knew that if it adjudged a dishonorable discharge and confinement, it could not give practical and complete effect to its determination to impose only partial forfeitures because that kind of sentence automatically deprived the ac-

cused of *all* pay and allowances by putting him into a nonpay status. Had the court-martial received such advice, under the hardship showing made by the accused, it might have decided to impose a bad-conduct discharge instead of a dishonorable discharge. Thus, it could avoid the provisions of 10 USC § 3636 (the successor to Act of March 4, 1915) and give practical meaning and effect to its sentence. In my opinion, the circumstances here show clearly that the accused was prejudiced by the law officer's failure to instruct the court-martial on the provisions of the cited statute. I would, therefore, set aside the sentence and order a rehearing as to it.