UNITED STATES, Appellee

v

TADEUSZ PAJAK, Chief Supply Clerk, U.S. Navy, Appellant

11 USCMA 686, 29 CMR 502

No. 14,008

Decided July 22, 1960

*Lieutenant Colonel Remmel H. Dudley,* USMC, argued the cause for Appellant, Accused.

*Commander Louis L. Milano,* USN, argued the cause for Appellee, United States. With him on the brief was *Major George M. Lilly,* USMCR.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

After almost a quarter of a century of honorable service in the United States Navy, the accused was brought to trial on October 22, 1959, before a general court-martial convened at Boston, Massachusetts, on charges of preparing a false pay receipt, wrongful appropriation of $490.00 in Government funds, and failure to obey a general order relating to duties of Navy disbursing officers, in violation of Articles 132, 121 and 92, respectively, Uniform Code of Military Justice, 10 USC §§ 932, 921, 892. Appearing with civilian counsel and appointed military counsel, the accused entered a plea of guilty. He was duly convicted on his plea and sentenced to a reprimand.

Two days before trial, the accused submitted a statement to the convening authority which indicated he had consulted with his civilian counsel and desired to plead guilty to the charges against him. He represented that he "fully" understood and "comprehend-[ed]" the meaning of his plea of guilty "and all of its attendant effects and consequences." Acting on the statement, the convening authority advised the accused that if the plea of guilty

was entered and the court adjudged a sentence greater than a reprimand, a fine of $400.00 and the loss of 200 unrestricted numbers, he would reduce the sentence to those limits. However, after trial, the accused read a "short item in a past issue of the NAVY TIMES Newspaper" which suggested that under the provisions of the so-called "Hiss Act" (68 Stat 1142, 5 USC § 2281, et seq), he might lose his retirement benefits, which had a calculated value of over $100,000.00, as a result of his conviction. The newspaper item was called to the attention of the staff legal officer, but it is not clear from the papers before us whether this was before or after the convening authority acted on the case. In any event, the convening authority approved the sentence and ordered its execution. The record of trial was forwarded for review to The Judge Advocate General of the Navy, and was submitted by him, in accordance with Article 69 of the Uniform Code of Military Justice, 10 USC § 869, to a board of review for its consideration.

Before the board of review, appellate defense counsel contended that the accused's plea of guilty was improvident

**687**

because entered without knowledge that under the "Hiss Act" he would be denied his retirement benefits. Accused's counsel further maintained that the accused should have been advised of the consequences of his plea of guilty. The board of review held there was no duty on the part of the convening authority to advise the accused of every possible collateral consequence of his decision to plead guilty. Thereupon, The Judge Advocate General of the Navy asked this Court to review the decision of the board of review on the following issue:

"Was the plea of the accused rendered improvident by reason of the failure of the convening authority or other responsible official to advise him of the applicability of the Hiss Act to his particular case?"

The "Hiss Act" provides, in substance, that no person convicted after September 1, 1954, of an offense committed in the exercise of his authority as an officer or employee of the Government, which is a felony under the laws of the United States or of the District of Columbia, shall be entitled to retirement pay. On September 28, 1959, the Comptroller General ruled that the Act applied to a conviction by court-martial for an offense of a civil nature which carried a permissible punishment extending to confinement exceeding one year. Comptroller General's Decision B–140390 (unpublished). Apparently no one connected with the trial of this case considered the possible application of the statute to the accused's situation, or was aware of the Comptroller General's ruling during the preliminary and trial proceedings.[1] The record does not show, and, in fact, it is not contended, that the accused was misled as to the possible consequences of his conviction. Cf. United States v Hamill, 8 USCMA 464, 24 CMR 274. Nor is

there any question of the relevance of the "Hiss Act" to the court-martial's deliberation on an appropriate sentence. See United States v Cleckley, 8 USCMA 83, 23 CMR 307. Also, we may pass over the question whether the accused can, for the first time on appeal, disavow his pretrial statement that he understood all the "attendant effects and consequences" of his plea. Reduced to its simplest terms, the issue is whether the accused's lack of knowledge of possible collateral consequences resulting from his conviction makes improvident his plea of guilty. In our opinion, it does not.

A plea of guilty must be provident and be made with an understanding of its meaning and effect. Article 45, Uniform Code of Military Justice, 10 USC § 845. Improvidence exists when the plea is based upon a misunderstanding, or lack of information, of the circumstances of the case. Cf. United States v Welker, 8 USCMA 647, 25 CMR 151.

The "Hiss Act" has no bearing whatever upon the substance of the acts charged to the accused. Possible application of the Act, at some future date, to retirement benefits does not in any way cast doubt upon his judicial admission that he committed the offenses or upon his knowledge and understanding of the penalties the law provides for those wrongs. In United States v Cleckley, supra, we held that a statute affecting a pecuniary right of the accused, which is unrelated to the penalties provided for the particular offenses of which he was convicted, "cannot be tossed into military law to befuddle sentences authorized by the Code."[2] By the same token, the purported effect of a collateral statute can-

---

[1] We express no opinion on the validity of the Comptroller General's ruling or on whether it applies to a person in the position of the accused.

[2] Although I dissented in the *Cleckley* case, the issue there was whether, in view of the special interest of the court members in one aspect of the sentence, it was proper to call their attention to

another Federal statute bearing directly upon the same subject matter and which, in my opinion, affected the appropriateness of the sentence. Here, the collateral consequence of conviction is unrelated to the initial question of guilt or innocence, and the accused's decision to confess guilt.

688

not be used to becloud the question of an accused's guilt or innocence.

Nothing in the record of the proceedings against the accused, or in the appellate papers, even suggests that the plea of guilty was based upon inadequate information about, or inadequate consideration of, the facts of the case. Neither is there any claim or suggestion that the accused was misinformed or misadvised about the legal limits of the punishment to which he was subject by reason of his misconduct. See *United States v Hamill, supra.*

The certified question is answered in the negative, and the decision of the board of review is affirmed.

Judges LATIMER and FERGUSON concur.