UNITED STATES, Appellee

v

VERL QUESINBERRY, Staff Sergeant, U. S. Air Force, Appellant

12 USCMA 609, 31 CMR 195

No. 15,203

January 19, 1962

 

*Major Charles K. Rush* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph E. Krysakowski.*

*Captain Richard T. Yery* argued the cause for Appellee, United States. With him on the brief were *Colonel Merlin W. Baker* and *Lieutenant Colonel Simpson M. Woolf.*

## Opinion of the Court

FERGUSON, Judge:

Tried by special court-martial upon charges of larceny and forgery, in violation, respectively, of Uniform Code of Military Justice, Articles 121 and 123, 10 USC §§ 921, 923, the accused was found guilty and sentenced to a bad-conduct discharge, confinement at hard labor for four months, forfeiture of $70.00 per month for a like period, and reduction to airman basic. The convening authority approved only so much of the sentence as provided for bad-conduct discharge and reduction. The supervisory authority and board of review found the sentence, as approved, appropriate and affirmed. We granted accused's petition for review on the issue whether the trial counsel correctly refused to comply with the court-martial's request for further information concerning the consequences of a bad-conduct discharge.

The record discloses the following circumstances with regard to the issue which is before us. Following announcement of the findings of guilty, receipt of matters in mitigation and extenuation, and delivery of general instructions on the sentence, the court-martial closed in order to deliberate upon an appropriate penalty. Ten minutes later, the court was reopened, and the president sought further information regarding permissible penalties. In answer to his questions, both legally-qualified counsel agreed that the court could separate the accused from the service only by means of a bad-conduct discharge; that such might be given without also adjudging confinement; and that a sentence to confinement would automatically result in accused's reduction when approved. In addition, the court was similarly furnished with information relating to accused's pay and the method by which possible forfeitures might be computed. The court was again ordered closed.

Ten minutes later, the court-martial once more convened in open session. The president announced that information was desired "on the consequences of a man getting a bad conduct discharge." Trial counsel expressed uncertainty concerning the precise answer to the court's request but indicated his willingness that the members examine a chart which reflected at least some of the disabilities flowing from a bad-conduct discharge. The president indicated that the chart to which trial counsel referred was "three years old" and suggested that a "later dated chart" be

610

obtained from a court member's desk drawer. Court was recessed in order for trial counsel to comply with this request.

When the court-martial reconvened, trial counsel and defense counsel joined in stating to the court members that the president's request could not be granted. In lieu thereof, the following instruction was suggested:

"Bad Conduct Discharge: In special courts-martial [sic] cases involving airmen, you are advised that a bad conduct discharge is designated as punishment for bad conduct and is a means of punishment for those who should be separated punitively under conditions other than honorable. You are further advised that with regard to veterans [sic] benefits, a bad conduct discharge adjudged by a special court martial is reviewed in most cases on its facts by the agency administering the particular benefit in question, before determining eligibility."

After a passage at arms with the president concerning whether the court members were entitled to know what rights an accused would lose upon receiving a bad-conduct discharge, the trial counsel stated that he was not prepared to give the court any further information. The president replied:

"It could well be that the court will be satisfied with that because in our further deliberations, we may determine—well, we may not need it after all. If we find ourselves at another impasse, we'll pursue it at that time. In that case the court is. . . ."

Prior to closing the court again, the president instructed the court as suggested by counsel. Thereafter, the court deliberated, reopened, and announced a sentence which included a bad-conduct discharge.

Appellant's position before us is not entirely clear. He seems to concede that the generalized instruction suggested by counsel and eventually adopted by the president was a correct statement of the law, but argues that the court was arbitrarily limited in its

search for further information regarding the consequences of a bad-conduct discharge by the trial counsel's refusal to furnish it. It is urged only inferentially that accused was entitled to have the court members made aware of the effect of a punitive separation upon his veteran's rights.

We reject at once any contention that the trial counsel *prevented* the president of this court-martial from obtaining information which the court desired. True it is that we have referred to the trial counsel as the ■ "legal adviser" of a special court-martial and placed upon him the duty to speak accurately if he refers the court to legal concepts. United States v Hatter, 8 USCMA 186, 23 CMR 410. We have never held, however, that he is required to furnish instructions to the court-martial. We have placed that duty squarely upon the shoulders of the president. United States v Bridges, 12 USCMA 96, 30 CMR 96; United States v Turner, 9 USCMA 124, 25 CMR 386. While the president may and should seek assistance from counsel in performing his instructional tasks, the ultimate responsibility remains firmly upon him, for that is where Congress placed it. Code, supra, Article 51, 10 USC § 851; United States v Bridges, supra.

This record makes it clear the president was fully aware of his duty. When trial counsel stated ■ that the court was not entitled to the desired information and suggested an alternative instruction, the president spoke not at all as one frustrated in an endeavor to obtain further advice. Rather, he indicated strongly that he believed the court was correct in its request for the chart and stated, in no uncertain tones, his intention to have it if "we find ourselves at another impasse." In short, we cannot believe that this record in any manner depicts a situation in which the president believed the court incapable of obtaining desired information because of the trial counsel's refusal to provide it.

Turning to the more basic question of

**611**

whether the court members were entitled to be informed of ■■■■■■ ■ the specific consequences of a bad-conduct discharge, we believe it well settled that they were not. United States v Cleckley, 8 USCMA 83, 23 CMR 307; United States v Peterson, 8 USCMA 241, 24 CMR 51; United States v Pajak, 11 USCMA 686, 29 CMR 502; United States v Paske, 11 USCMA 689, 29 CMR 505.

Our decision in United States v Cleckley, supra, points up the propriety of counsel's refusal to advise the court-martial of the specific administrative effects of a bad-conduct discharge. There, it was urged that a sentence to dishonorable discharge, confinement, and partial forfeitures was inconsistent, as the provisions of 10 USC § 3636 prevented the accrual of pay and allowances to an enlisted member of the Army confined under a sentence which included a suspended dishonorable discharge. In holding the sentence perfectly consistent, we stated, at page 85:

"We find no reason why we should interpret the financial statute in derogation of the power of a court-martial. On the contrary, we need not deal with that Act at all, for all we need say is that the authority of a fiscal agent of the Federal Government acting under a separate law to pay or not to pay the accused is a matter which cannot be tossed into military law to befuddle sentences authorized by the Code."

And in United States v Pajak, supra, when faced with the claim that an accused's plea of guilty was improvident because he was not advised that conviction would result in denial of retirement benefits under the so-called "Hiss Act," we held that "the purported effect of a collateral statute cannot be used to becloud the question of an accused's guilt or innocence." United States v Pajak, supra, at page 688.

In sum, the rule which is applicable here is simply that precept which commands courts-martial to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration. United States v Paske, supra; United States v Armbruster, 11 USCMA 596, 29 CMR 412. By no means, however, do we mean to intimate that the court should not be informed that a punitive discharge may adversely affect an accused's future, both with regard to his legal rights and to his social acceptability. But that advice was essentially given to the court in the instruction suggested by counsel and adopted by the president. Moreover, the inquiries by the president were so phrased as to make it apparent that the general consequences of a bad-conduct discharge were known to all present. Thus, it cannot be seriously contended that the court was not aware of the general effects of a bad-conduct discharge. They were entitled to know no more. United States v Cleckley, supra; United States v Armbruster, supra. To hold otherwise would mean that presidents and law officers would be required to deliver an unending catalogue of administrative information to court members. We do not believe that the waters of the military sentencing process should be so muddied.

The decision of the board of review is affirmed.

QUINN, Chief Judge (concurring):

For the reasons set out in my dissent in United States v Cleckley, 8 USCMA 83, 23 CMR 307, I disagree with a great deal of the discussion in the principal opinion. However, the record of trial convincingly indicates that the court-martial was satisfied with the information submitted to it by agreement of the Government and the accused, and that it had an adequate basis upon which to determine the appropriateness of including a bad-conduct discharge in its sentence. I, therefore, join in affirming the decision of the board of review.

KILDAY, Judge (concurring):

I concur.

The critical inquiry here is whether the court-martial had the use of adequate guideposts in deliberating on an appropriate penalty. I understand my associates to join in resolving that question affirmatively and, therefore, I am

in the happy position of agreeing with both my colleagues.

Generally speaking, I believe it fair to state that the opprobrium attaching to punitive separation from the armed forces is well known to personnel who sit on courts-martial. In voicing that observation, however, I do not wish to be misunderstood as indicating that more particular consequences in a specific case should not be considered by court members or argued by counsel. But in the present instance the court received not only the standard advice on imposable punishment, but also additional general information concerning the severity of a sentence to punitive discharge. The latter instruction was submitted to the triers of fact in answer to their inquiry and, we note, counsel for both parties—each being a qualified lawyer—agreed to it and joined in such response. Further, the president indicated the court's satisfaction with it. Surely nothing more was required under the circumstances in this case.