694

UNITED STATES

v.

**Phillip S. GIVENS, 436 98 6054, Ship's Serviceman Third Class, (E–4), U. S. Navy.**

NMCM 810305.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 23 June 1980.

Decided 21 May 1981.

LCDR W. P. Caruthers, JAGC, USN, Appellate Defense Counsel.

LT William C. Martucci, JAGC, USNR, Appellate Government Counsel.

Before GREGORY, Senior Judge, and DONOVAN and GLADIS, JJ.

DONOVAN, Judge:

Appellant seeks disapproval of the sentence and a rehearing because the military judge did not fully answer the members' question, posed during their deliberations on sentencing, on "what loss of privileges and/or rights a Bad Conduct Discharge entails." We reject the assigned error under the facts of this case and affirm.

Pursuant to his pleas, appellant was found guilty of 14 specifications of extortion, Article 127, 10 U.S.C.A. § 927, Uniform Code of Military Justice (UCMJ), and not guilty of 4 specifications of assault, Article 128, 10 U.S.C.A. § 928, UCMJ. All offenses involved one and the same victim; the extortions extended from 15 December 1979, at intervals, to 31 January 1980.

In his sentencing instructions, the judge advised the members "that the stigma of a punitive discharge is commonly recognized . . . limitations which is places on employment opportunities and other advantages . . . [it] will clearly affect the accused's future . . . economic opportunities. . . ." (R. 87).

After 50 minutes deliberation, the court opened and the president posed the question quoted earlier. The following dialogue followed:

PRES: Yes, we don't know what loss of privileges and/or rights a Bad Conduct Discharge entails.

MJ: Well, there's no determination made by the Navy on particular bene— Veteran's Administration makes their own independent determination and I don't have any information for you on the effect of Bad Conduct Discharge on veteran's benefits. Veteran's Administration makes an independent determination as to what benefits a person is entitled to. The question is whether the offense calls

for a Bad Conduct Discharge, not what the effect of a Bad Conduct Discharge is. Do you see the distinction there? Do you understand the difference in those two questions?

PRES: Yes, sir.

MJ: The other ones might be obvious. If you deprive a man of money, then he doesn't have money. I understand what you're saying too; however, there's no hard and fast rule what benefits the man is deprived of as a result of the type discharge he gets. It's an independent determination made by another agency and not by the Navy, so that's difficult in explaining to you. If you want to, if you want to presume the worst, why don't you presume that he loses all of them. If you want to presume the best, you can presume that he doesn't lose any. If we had any real, hard and fast rule I would give it to you, but there isn't one; it's a determination made by someone else, not this court and not the command or not the Navy, really. So, these are veteran's benefits determined by the Veteran's Administration. Sorry I can't be more helpful in that respect.

PRES: I have another question.

MJ: All Right.

PRES: Can we get a list of the veteran's benefits that are available for an honorable discharge?

MJ: See, you're getting off on a—see, you're getting off on a collateral question which is not necessarily the question you're here to decide, if you understand what I mean. This is not a board to decide what benefits he gets. . . . This is not a board to decide whether he's entitled to any veteran's benefits or not. Like I said, you can presume on the proverbial ones that most everybody knows about that's been around the Navy any amount of time, the GI Bill, and possible hospitalization or something in a VA Hospital for service-connected injuries and things like that, but I hate for you to get off on a collateral issue which is really not your concern. Needless to say, if you award a Bad Conduct Discharge, it's ordered executed, the man has not got an Honorable Discharge, and he won't get the benefits that one whose characterization of service is honorable. He'll get less benefits than that person. That's the—I think we can say that without fear of contradiction. Also on any possible reenlistment ramifications, that would certainly have an effect on whether or not a man would ever be reenlisted if he decided to come back in the Navy. That would have an adverse reaction on that; of course that hasn't even been raised in this case, and it's probably not a possibility. Or probability anyhow. Okay. Further questions?

MJ: (After a pause) Court will be closed.

(R. 90–91).

■■■ Sentencing instructions must be tailored to the offender, the offense, and relevant matters. *United States v. Walzer*, 6 M.J. 856 (NCMR 1979). When the issue of "the specific administrative effects of a bad-conduct discharge" arises, "the rule which is applicable . . . is simply that precept which commands courts-martial to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration." *United States v. Quesinberry*, 12 USCMA 609, 612, 31 CMR 195, 198 (1962). The facts here are similar to *Quesinberry* in that the members were initially given general instructions on the adverse effects of a punitive discharge. As to members questioning for further information, the Court of Military Appeals said no further instruction should be given. "To hold otherwise would mean that [judges] would be required to deliver an unending catalogue of administrative information to court members." *Id.* See also *United States v. Brown*, 1 M.J. 465 (CMA 1976), in which the income tax consequences to an accused facing a fine as opposed to a forfeiture were considered collateral and not a proper subject for inquiry.

We avoid collateral matters not out of inertia or desire to limit our tasks. Impor-

tant reasons underlie the decision. A useful guide to courts-martial suggests that introductory instructions on sentencing given by the judge to the members caution them that they "must not adjudge an excessive sentence in reliance upon possible mitigating action by the convening or higher authority." Paragraph 8–2, *Military Judges' Guide*, DA Pamphlet 27–9 (Change 1 June 1971). If energetic trial participants did delve into the administrative implications of punitive discharges, they would soon detect variables of discretion which repose in Veterans' Administration (VA) officials. Administrative research would also lead inevitably to the possibilities of trends in Naval Clemency and Parole Board relief as to individuals within particular classes of offenders. "Veterans' Benefits" occupy three volumes of the United States Code Annotated. Courts-martial progress would come to a halt if all possible questions based on prior facts, possible sentences and foreseeable agency actions were to be instructed, understood, and argued.

Article 25(*d*)(2), 10 U.S.C.A. § 825(d)(2), UCMJ, requires convening authorities to detail as members those persons who by "age, education, training, experience, length of service, and judicial temperament" are best qualified to serve. Members need not be senior in grade or time of service to have a working awareness of the major impact of a punitive discharge. Any added burden, as appellant here seeks, of providing detailed instructions would lead to uncertainties and confusion. Attempting to instruct on recent executive, legislative and judicial action in the area of Discharge Review Boards is one example of the difficulties such new burden would present.[1]

Optimism born of mere expectancies of future agency relief would also run contrary to the rule that members must sentence without reliance on possible relief by higher authority. Any reference in arguments on sentencing to administrative regulations of the VA, or the Internal Revenue Service, as sought in *United States v. Brown, supra,* would violate the Manual prohibition against reliance on policy directives of higher authority, albeit that prohibition was primarily designed to cure command influence problems.[2] Paragraph 75f, MCM, addresses arguments on sentencing and states in part:

> *Argument.* After introduction of matters relating to the sentence, counsel for each side may make argument for an appropriate sentence. Trial counsel may not, in this argument, purport to speak for the convening authority or any higher authority, refer to the views of these authorities, refer to any policy directive relative to punishment. . . .

Our review satisfies us that the military judge "substantially covered" the issue of adverse effects; therefore, we need not address the third criteria set out in *United States v. Winborn,* 14 USCMA 277, 282, 34 CMR 57, 62 (1963), in analyzing the alleged prejudice of the declined instruction. We are satisfied that the judge's refusal to expand his instructions was no abuse of discretion.[3] In view of the absence of any confinement at hard labor adjudged, we conclude the members accepted the instructions on the adverse effects of the discharge on a "worst" case basis. (R. 90).

Appellant apparently had no compelling need for the money extorted nor was there defense evidence of him being denied loans

1. Another area involves disability benefits. 38 U.S.C. § 105(a) states as to injury or disease that any such injury or disease "incurred during active . . . naval . . . service will be deemed to have been incurred in line of duty and not the result of the veteran's own misconduct"; § 105(b) observes, however, that the line of duty requirement is not met if the injury or disease was contracted while "confined under sentence of court-martial involving an unremitted dishonorable discharge. . . ."

2. Analysis of Contents, *Manual for Courts-Martial, 1969, (Rev.),* DA Pamphlet 27–2 July 1970 at 13- 6 and 13- 7.

3. *Accord, United States v. Edwards,* No. 791485 (NCMR 17 October 1980). We further note that, as the Congress could *increase* administrative penalties after trial, administrative enforcement of sentences voted upon with the instructions appellant seeks would be clerically confusing and also would be subject to protests of *ex post facto* violation.

from lending institutions. Appellant's course of conduct was deliberate and was terrifying to the sailor-victim. Accordingly, the findings and sentence as approved on review below are affirmed.

Senior Judge GREGORY and Judge GLADIS concur.