**UNITED STATES**

v.

**Sergeant Devi P. MAHARAJH, FR 118–46–4243, United States Air Force.**

**ACM S28027.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 4 Jan. 1989.

Decided 25 May 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Bernard E. Doyle, Jr.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Lieutenant Colonel Robert E. Giovagnoni and Lieutenant Colonel Barrett E. Kean, USAFR.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

BLOMMERS, Judge:

Consistent with his pleas, the appellant was found guilty of a 14–day unauthorized absence and four specifications of making and uttering checks and thereafter dishonorably failing to maintain sufficient funds in his bank account to insure payment upon their presentment, in violation of Articles 86 and 134, UCMJ, 10 U.S.C. §§ 886, 934. The worthless check offenses involved 19 checks for a total of $2,750.00. Tried by a special court-martial with members, he was sentenced to a bad conduct discharge, 45 days hard labor without confinement, two months restriction, and reduction in grade to airman basic (E–1). The convening authority approved only so much of the sentence as provided for the discharge and reduction in grade. Before us the following issue is raised:

> WHETHER THE MILITARY JUDGE FAILED TO PROPERLY INSTRUCT THE MEMBERS ON THE APPROPRIATENESS OF A PUNITIVE DISCHARGE DURING VOIR DIRE AND SENTENCING.

■ As is not uncommon, the matter of the appropriateness of a punitive discharge initially arose as a result of a question addressed to the members by trial defense counsel during the *voir dire* process. *See United States v. Tippit,* 9 M.J. 106, 108 (C.M.A.1980). The following exchange took place:

> DC: Do you agree that if you feel that Sergeant Maharajh should not be retained in the service, but that you also feel that he does not deserve a punitive discharge, that you will not vote for a punitive discharge?

> MEM [LT COL VAN WAGNER]: I don't ...

> DC: Do you all understand my question?

> MEM [LT COL VAN WAGNER]: I don't understand ... no.

> DC: It's kind of convoluted.

> MEM [LT COL VAN WAGNER]: Uh huh.

> DC: If you feel that Sergeant Maharajh should not be retained in the United States Air Force, but then you feel that he does not deserve a punitive discharge, would you all agree that you would not vote for a punitive discharge?

> DC: Affirmative response from all members....

> &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

> MJ: There will be some further instructions regarding punitive discharge, what it means, what its effect is, and what its purpose is for.

During an Article 39(a) session dealing with sentencing instructions, defense counsel, stating his belief that the court members were confused about "the effect and the possibility of discharge versus no discharge," proposed a clarifying instruction, citing as authority therefor *United States v. Davenport,* 14 M.J. 547 (A.C.M.R.1982), *aff'd,* 17 M.J. 242 (C.M.A.1984). (We do not find the *Davenport* case to be of assistance in the resolution of the issue before us.) He indicated the instruction "clearly states that their decision not to adjudge a punitive discharge would not mean that Sergeant Maharajh would be allowed to stay in the military. It would just mean that they are basically saying he does not deserve a punitive discharge." The military judge declined to give the requested instruction over trial counsel's objection.

■ We find no harm to the appellant from this ruling. First, a basic precept of military law is that court members are "to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration." *United*

*States v. Quesinberry,* 12 U.S.C.M.A. 609, 31 C.M.R. 195, 198 (1962). *See also United States v. Murphy,* 26 M.J. 454 (C.M.A. 1988); *United States v. Griffin,* 25 M.J. 423 (C.M.A.1988); *United States v. Givens,* 11 M.J. 694 (N.M.C.M.R.1981). We agree with appellate government counsel that whether or not an accused could be discharged administratively should a punitive discharge not be adjudged falls within the ambit of this rule, and ordinarily is not a proper matter for instruction. Second, the record does not substantiate trial defense counsel's concern that the court members were confused about this matter. When he rephrased his question on *voir dire,* as set forth above, all the members gave a straight-forward reply. Finally, the military judge offered defense counsel more than reasonable opportunity to make his point to the members should he choose to do so. He first ruled that information concerning the possibility of administrative discharge could be provided to the court through testimony from the appellant's commander, who had previously testified as a prosecution witness. When defense counsel expressed a reluctance to do so, the judge indicated counsel could address this matter in argument. However, the resolution of this matter does not end here.

■ The military judge gave the following instructions to the members with regard to a punitive discharge:

As far as a bad conduct discharge goes, that's a punitive discharge. The stigma of a punitive discharge is commonly recognized by our society, and it will affect the Accused's future with regard to legal rights, economic opportunities, and social acceptability.

*On the other hand, it is the duty and responsibility of a court-martial to adjudge a punitive discharge if the members conclude, based upon the evidence before them, that further service is not warranted.*

A bad conduct discharge ... and that's the only punitive discharge available in this court ... is designed as punishment for bad conduct. It is for those who

should be separated punitively under conditions other than honorable.

With regard to veteran's benefits, a bad conduct discharge adjudged by a Special Court–Martial is reviewed on its facts by the agency administering the benefit in question before eligibility is determined. You're not required to adjudge a discharge, but if you do, you may only adjudge a bad conduct discharge.

(Emphasis added.) The highlighted portion does go directly to the matter that concerned the trial defense counsel. We note that this language is not part of the standard instructions regarding punitive discharges. *See* Department of the Army (DA) Pamphlet 27–9, *Military Judges' Benchbook,* para. 2–37, at pgs. 2–44 and 2–44.1 (Change 2, 15 October 1986). It is not entirely clear to us what the military judge was trying to accomplish by including this language in his instructions, but since he did broach the area of retention in the service, then he should have given an instruction more in line with that requested by the defense (i.e., that a decision on the members' part not to include a punitive discharge in their sentence would not necessarily mean the appellant would be retained in the service). To instruct as he did was clearly inappropriate. *Cf. United States v. Pope,* 17 U.S.C.M.A. 156, 37 C.M.R. 420 (1967).

■ Defense counsel did not object to the punitive discharge instruction as given. We agree with appellate defense counsel that it would not be appropriate to apply the waiver rule in this case (R.C.M. 1005(f)), since defense counsel had requested an instruction on this precise issue which was rejected by the military judge. However, we find no prejudice to the appellant as a result of the erroneous instruction given. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

There are two bases upon which we rely in reaching this conclusion. First, contrary to the findings reached by the Court in *Pope* and the cases cited therein, we are satisfied that the court members did understand their sentencing power. In his instructions, the military judge did indicate

that the court was not required to adjudge a discharge, but that if they did, the only type discharge they could adjudge was a bad conduct discharge. The instructions regarding discharge given by the military judge, taken as a whole, plus the court members' response to defense counsel's questions during *voir dire* as set forth above, convince us that the members did understand their sentencing power with respect to a discharge.

Second, we find that under the circumstances present in this case, there was no reasonable likelihood that the members would not have included a punitive discharge in their sentence. *See United States v. McNally*, 16 M.J. 32 (C.M.A.1983); *United States v. Volmar*, 15 M.J. 339 (C.M.A.1983). The appellant plead guilty to offenses for which a bad conduct discharge is not an unlikely consequence, even in a trial by special court-martial. Evidence presented to the members during the pre-sentencing hearing included: (1) a previous conviction by special court-martial in 1981 for an eleven month unauthorized absence for which a bad conduct discharge was adjudged but later commuted by the convening authority; (2) a letter of reprimand for driving while drunk and thereby causing an accident with personal injuries in March 1988; (3) a letter of reprimand for failure to go on 17 October 1988; (4) an Article 15 punishment for another failure to go on 20 October 1988; and (5) testimony from a psychologist (a defense witness) that the appellant had been diagnosed as an alcoholic since 1980, that he had twice attended military alcohol rehabilitation programs, and that his prognosis for recovery was "guarded." The Stipulation of Fact entered into by the parties in support of the appellant's guilty pleas indicates that when he turned himself in following the period of unauthorized absence herein charged, Security Police personnel say the appellant told them "he went AWOL because he wanted to get out of the service." In his unsworn statement to the court members, the appellant related his belief that jail would not help him, but that "it would be beneficial for them to send me home." (All of the above matters were before the court before the issue concerning the defense requested sentencing instruction ever arose.) Finally, with the express consent of his client, defense counsel argued that the appellant should be sentenced to a bad conduct discharge in lieu of confinement. Appellate defense counsel argue that this was a last minute change in strategy on the part of trial defense counsel and the appellant because of the military judge's refusal to give the defense requested instruction on punitive discharges. We find no support for this contention in the record. As noted above, the military judge offered defense counsel two alternative means of making the point he wanted to the members. Counsel chose not to do so. We will not speculate as to his tactics. *United States v. Rivas*, 3 M.J. 282, 289 (C.M.A. 1977); *United States v. Mansfield*, 24 M.J. 611, 617 (A.F.C.M.R.1987).

■ A final matter warrants brief comment. The appellant was not provided the opportunity, on the record, to ask the military judge any questions he might have had about his appellate rights at the completion of said rights advisement. *United States v. McIntosh*, 27 M.J. 204, 207–08 (C.M.A.1988); DA Pamphlet 27–9, para. 2–44 (Change 2, 15 October 1986). This is the third case reviewed recently by this Panel that contains this omission. Military judges should by now be fully aware of their responsibilities under R.C.M. 1010 as interpreted by the United States Court of Military Appeals. This is especially so since that Court had earlier addressed substantially the same issue. *United States v. Rogers*, 21 M.J. 435 (C.M.A.1986). For the same reasons set forth in *United States v. Darby*, 27 M.J. 761, 765 (A.F.C.M.R.1988), we find no prejudice to the appellant. *See United States v. Rogers*, 21 M.J. at 437. However, we trust we will see no more records with this defect.

The findings and sentence are correct in law and fact and no error prejudicial to the appellant's substantial rights was committed. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Senior Judge KASTL concurs.

Senior Judge LEWIS (concurring):

"On the other hand, it is the duty and responsibility of a court-martial to adjudge a punitive discharge if the members conclude, based upon the evidence before them, that further service is not warranted." No. Congress intended that a punitive discharge be severe punishment and that it be treated as severe punishment by those who impose it. *United States v. Soriano*, 20 M.J. 337, 342 (C.M.A.1985), and cases cited therein. It would take a whole lot of proper sentencing instructions —a good deal more than what we have before us in this case, in my view—to remove the presumptive taint of the quoted instruction. Make no mistake about it, in nearly any circumstance other than the precise, and somewhat fortuitous, circumstance of this case, we would be viewing the appellate equivalent of a train wreck.

The circumstance I allude to is the defense election to argue for a bad conduct discharge in lieu of confinement. This election was announced in an Article 39(a), UCMJ, session prior to sentencing instructions. Thus, the election was in no manner influenced by what we all agree was an erroneous instruction. The appellant received a thorough and correct advisement from the military judge concerning the ramifications of a punitive discharge. *See United States v. Weikel*, 24 M.J. 666, 668 (A.F.C.M.R.1987), *pet. denied*, 25 M.J. 305 (C.M.A.1987), and cases cited therein. He acknowledged that he understood and that he nonetheless consented to his counsel's arguing as indicated.

The defense counsel, thereafter, closed his sentencing argument as follows: "He understands that his place is not in the United States Air Force. But he wants to go home now. He wants to start his life over, and he does not want to go into confinement. I ask that you carefully consider a bad conduct discharge with no confinement." No objection was made to the military judge's instructions. Ironically, the offending instruction was not inconsistent with the defense sentencing strategy in this case. The appellant's approved sentence includes a bad conduct discharge and reduction to airman basic. Confinement was not adjudged. In essence, the appellant received the punishment his counsel argued for on his behalf. He suffered no prejudice.

I have reached the bottom line in my analysis of why I conclude that the approved sentence is correct in law and fact. I would be reluctant to premise any evaluation of prejudice on an attempt to determine what sentence result was either likely or unlikely in this case. A special court-martial has limited sentencing authority. In this environment, the bad conduct discharge assumes the central focus more often than not. I do not know what current statistics demonstrate with respect to the imposition of a bad conduct discharge as a component of punishment in special courts-martial. However, I do know that experience over the years has taught many of us that a bad conduct discharge is never preordained in a special court-martial composed of members who are properly instructed. A price we pay for due process is manifested in occasional sentence results that may be seen by some as inadequate. While I might be willing to say that I would have adjudged a bad conduct discharge on a given record, I am very wary of saying what a panel of members was either likely or unlikely to have done in the absence of the error under consideration. *Cf. United States v. Ohrt*, 26 M.J. 578 (A.F.C.M.R.1988), *pet. granted*, 27 M.J. 423 (C.M.A.1988), which recognizes that non-commissioned officers convicted of drug abuse are likely to receive punitive discharges. If our case law instructs us that we may consider what was likely to have occurred in assessing sentencing prejudice in a special court-martial with members, then our case law needs to be reevaluated.

On a more theoretical level, the implication of evaluating, after the fact, the inevitability of a punitive discharge leads to the creation in the mind of the reviewer of two classes of appellant. Appellant A's situation was aggravated. He was likely to have received a bad conduct discharge. He was beyond the point of being prejudiced. Therefore, he is entitled to no sentence relief. Appellant B's situation was more

ambiguous in the eye of the appellate beholder. He had a fighting chance of receiving a sentence that did not include a bad conduct discharge. The same error occurred in his trial. He is entitled to appropriate sentence relief. I submit that this formulation does not foster results that are either demonstrably fair or trustworthy.

As reflected by my analysis, I concur in the result reached in the lead opinion.