OPINION OF THE COURT
MORGAN, Judge:
Appellant was convicted pursuant to his guilty pleas of seven specifications of sodomy with three different teenage boys in violation of Article 125 of the Uniform Code of Military Justice[1] (UCMJ), one specification of conduct unbecoming an officer for having a disgraceful and unprofessional relationship with a USAF male E-5, (SSgt M), in violation of Article 133,[2] and fourteen specifications of indecent acts with the same three boys and SSgt M, in violation of Article 134, UCMJ.[3] He assigns three errors: that his sentence to a dismissal and seven years confinement constituted cruel and unusual punishment in violation of the Eighth Amendment; that the sentence was inappropriately severe; and that the military judge erred in not reopening the providency inquiry when evidence arose suggesting lack of mental responsibility. Finding these assignments of error meritless, we affirm.
While assigned to the United States Transportation Command, (USTRANSCOM), appellant rose to a position of prominence and respect in his church, where he was the youth choir director and an adult chaperon at a number of youth functions. The record reveals that he used this position to form close relationships with CL and JL, junior high school age twin brothers, and BW, all of whom were, when he first began the acts here charged, under the age of 16. Over a period of time spanning August 1, 1988, through October of 1992, appellant engaged in various indecent acts with the three boys, and orally and anally sodomized two of them on a number of occasions. These acts were variously performed while the appellant accompanied the boys on camping trips, trips to visit appellant’s father-in-law, and in motel rooms, the appellant’s house, his car, and even in the USTRANSCOM headquarters building on Scott Air Force Base. The record further reveals that during a period of April through October of 1992, the appellant performed various indecent acts with SSgt M, including arranging a temporary duty assignment so as to be with SSgt M in California and vacationing with him in Arkansas. At trial appellant pled guilty to all charges and specifications, but limited his description of the acts substantiating Charge I to incidents of oral sex only. Two of the three boys, however, testified to specific incidents of being anally sodomized by appellant.
I. WHETHER DISMISSAL CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT
Without objection from trial counsel, appellant was permitted to offer evidence showing that, according to actuarial tables, the value of his retirement based upon his 25 years of active duty service could amount to close to $750,000. Appellant urged the military judge to take careful account of the financial injury to his wife and family attending any forfeitures. The thrust of appellant’s sentencing case was that confinement would sever the course of counseling and therapy essential to his rehabilitation, and that finan *518 cial penalties would not only injure his wife and family, but would diminish his capability to pay for the counseling, therapy, and prescriptions needed to assist his young victims, something which through counsel he offered to do.[4] We infer that this had an impression on the military judge, as forfeitures formed no part of his sentence.
Appellant now argues that, in his circumstances, the punishment of dismissal from the service, with the attendant consequence of loss of retired pay, offends the Eighth Amendment’s prohibition of cruel and unusual punishment or excessive fines.[5] Appellant’s argument suffers from a number of infirmities, not the least of which is that the loss of retired pay is not a component of the sentence. It is, rather, a potential consequence of the sentence. The general rule has been that collateral consequences of a sentence are not properly a part of the sentencing consideration. See United States v. Cleckley, 8 U.S.C.M.A. 83, 23 C.M.R. 307, 309 (1957) (“we are not disposed to interpret the financial statutes to restrict the power of a court to sentence as authorized by military law____ To reach a contrary conclusion would throw the whole system of sentencing in military courts out of balance.”); United States v. Quesinberry, 12 U.S.C.M.A. 609, 31 C.M.R. 195, 198 (1962) (courts-martial are to concern themselves with the appropriateness of a particular sentence for an accused “without regard to the collateral administrative effects of the penalty under consideration”). Compare United States v. Pajak, 11 U.S.C.M.A. 686, 29 C.M.R. 502 (1960) (plea of guilty not improvident even where appellant unaware that Hiss Act would have effect of denying him retirement earned after 25 years active service) with United States v. Paske, 11 U.S.C.M.A. 689, 29 C.M.R. 505 (1960) (staff judge advocate did not err in failing to advise convening authority of adverse financial consequence of sentencing as a result of decision of comptroller general). This rule has remained undisturbed after more than 30 years. See, e.g., United States v. McElroy, 40 M.J. 368, 372 (C.M.A.1994), cert, denied, — U.S.-, 115 S.Ct. 1256, 131 L.Ed.2d 137 (1995); United States v. Griffin, 25 M.J. 423, 424 (C.M.A.), cert, denied, 487 U.S. 1206, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988) (“The general rule concerning collateral consequences of a sentence is that ‘courts-martial [are] to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration.’ We see no need to relax this rule today.” (citations omitted)). There is authority for the proposition, however, that the loss of retired pay for one who is retirement eligible is a collateral consequence only in theory, and “in reality, the impact of an adjudged punishment on the benefits due an accused who is eligible to retire is often the single most important sentencing matter to that accused and the sentencing authority.” Griffin, 25 M.J. at 424. Cf. United States v. Henderson, 29 M.J. 221, 222 (C.M.A.1989) (loss of retired pay for one three years away from retirement so collateral as to be inadmissible).
Whether the loss of retirement benefits and pay is a direct or a collateral consequence of the imposition of a punitive discharge, it is indisputable that it is a consequence of the sentence and forms no part of the sentence itself. The Eighth Amendment states, “Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.” We reject out of hand analysis of appellant’s case under *519 the “cruel and unusual punishment” portion of the Eighth Amendment, as loss of retired pay is in no sense a punishment administered by court-martial. See Walton v. Arizona, 497 U.S. 639, 670, 110 S.Ct. 3047, 3066, 111 L.Ed.2d 511 (1990) (Scalia, J., concurring) (last portion of Eighth Amendment only regulates punishments, which to offend that amendment must be cruel and unusual.) We doubt that punitive discharge from the service is cruel in the context intended by the Constitution. Certainly it is not unusual.
We likewise doubt that the probability of a loss of retired pay attending a punitive discharge is reviewable against the constitutional prohibition of “excessive fines.” The “entitlement” to military retired pay following 20 years of service is, strictly speaking, not an entitlement at all, as it is at all times discretionary with the Secretary of the Air Force. 10 U.S.C. § 8911 (1994). The Secretary, similarly, is empowered to commute, remit, or suspend a dismissal, which may not be executed until the Secretary has approved it and the Court of Appeals for the Armed Forces has either rejected a petition for review, or ruled on the case, and if a petition for certiorari is filed, the Supreme Court has acted on such petition. 10 U.S.C. § 871 (1994). Read together, these two statutes mean that the Secretary of the Air Force is free to disapprove appellant’s dismissal and approve his retirement.
Nor is appellant’s assumption of an automatic loss of retired pay and its reduction to a dollar figure the legal equivalent of a fine.[6] The punishment available at court-martial is precisely articulated, and its limits may be precisely ascertained. Article 56 of the UCMJ[7] permits the President to prescribe forms of punishment, of which a fine is one. R.C.M. 1003(b)(3). A fine, imposed as part of a sentence adjudged, is a sum certain, is intended to be and is imposed as punishment. As a judgment of the court, it makes the accused immediately liable to the United States for the entire amount of money specified in the sentence. As such, it is amenable to analysis with reference to the strictures of the Eighth Amendment.
By contrast, the loss of military non-disability retirement eligibility is neither a sum certain, nor is it a judgment of a court-martial. While Griffin appears to stand for the proposition that a sentencing authority may, with the permission of the accused, be instructed upon and consider the likelihood of the loss of retirement eligibility that would likely result from the sentence of a punitive discharge for a retirement eligible accused, we do not believe that Griffin requires the military judge to allow actuarial evidence of the potential economic consequences which might ensue.[8] Indeed, holding in favor of appellant on Eighth Amendment grounds would have the practical consequence of declaring the punitive discharge of any retirement eligible accused constitutionally impermissible, a result which would have astounded the drafters of the Bill of Rights.
II. WHETHER APPELLANT’S SENTENCE IS INAPPROPRIATE
Appellant points with justifiable pride to his lengthy and honorable service, including flying combat missions in the C-130 in Vietnam. Unfortunately, that service is, in part, what enabled him to insinuate himself so effectively into the confidence of his victims and their families. The cynical exploitation of appellant’s standing and accomplishments in the Air Force, his perverse twisting of Biblical scripture to not merely rationalize, but sanctify his crimes to his victims, and the callous disregard for the physical and psychological health of those victims dwarf in their enormity the achievements of appellant’s career. Even allowing for multiplicity, counsel for all sides and the military judge agreed that appellant could have been sen *520 tenced to 106 years in prison, while his pretrial agreement called for a maximum of 15 years confinement, total forfeitures, and a dismissal. Under the circumstances, we cannot say that confinement for seven years, a dismissal, and no forfeitures is inappropriately severe.
III. PROVIDENCY OF THE GUILTY PLEA
Appellant’s last assignment of error hinges on the testimony of a psychiatrist who testified during the sentencing portion of the trial, Dr. John R. Smith. In his brief, appellant asserts that Dr. Smith testified to the effect that appellant had “no power to change ” the sexual behavior. (Emphasis appellant’s.) Based upon this testimony, appellant argues the judge should have reopened the providency inquiry to further explore whether a sanity defense might obtain. A complete reading of the record does not support the inference appellant wishes the court to draw. The reference to “no power to change” was to the development of appellant’s homosexual orientation,[9] not to his ability to differentiate right from wrong. Dr. Smith specifically testified that appellant “does not have any significant psychiatric disorder of the type that would interfere with his ability to think, to behave rationally and reasonably.” This evidently was the conclusion of the sanity board requested by the appellant, which, according to Dr. Smith, did not turn out as appellant had hoped. Although the record shows that a sanity board was conducted, and that the appellant’s expert witness had examined it, it was not introduced at trial, and trial defense counsel specifically denied that her investigation had revealed any facts giving rise to a defense. The military judge is entitled to afford weight to that judgment of trial defense counsel. United States v. Clark, 28 M.J. 401 (C.M.A.1989). We do not, therefore, find even the possibility of such a defense, much less a substantial basis in law and fact for questioning the plea sufficient for us to upset the trial judge’s determination in this case. United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991); United States v. Logan, 22 U.S.C.M.A 349, 351, 47 C.M.R. 1, 3 (1973).
Accordingly, the findings and sentence are correct in fact and in law, and are
AFFIRMED.
Senior Judge PEARSON concurs.

. 10 U.S.C. § 925 (1988).

. 10 U.S.C. § 933 (1988).

. 10 U.S.C. § 934 (1988).

. Appellant’s victims, and the parents of CL and JL, testified to grave, and enduring, psychological damage occasioned by appellant’s conduct. CL, particularly, suffered from panic attacks, unwillingness to go into men’s locker rooms, severe weight loss, depression and sleeplessness. At the time of trial he was undergoing treatment with anti-depressants and anti-anxiety prescription drugs. BW would testify only under the condition that his mother not be present at trial. The record, including a voluminous clemency submission, is silent as to whether appellant followed-up on his offer to fund therapy.

. In addition to appellant’s Eighth Amendment protection, Article 55, UCMJ, 10 U.S.C. § 855, entitled "Cruel and Unusual Punishments Prohibited," provides ”[p]unishment by flogging, or by branding, marking, or tattooing on the body, or any other cruel or unusual punishment, may not be adjudged by a court-martial or inflicted upon any person subject to this chapter."

. The Court of Military Appeals has reserved opinion as to whether an actuarial estimate of the value of retired benefits could be relevant evidence, even in sentencing. United States v. Henderson, 29 M.J. 221, 222 (C.M.A.1989).

. 10 U.S.C. § 856 (1994).

. Affixing a dollar value to the loss of retirement eligibility necessarily depends upon the manipulation of a vast number of variables and assumptions relating to life expectancies, the value of benefits, inflation, and future legislation, a sentencing procedure we do not believe Griffin and Henderson approve.

. The recitation to this portion of Dr. Smith’s testimony is particularly ironic, since it was the stated purpose of appellant’s trial defense counsel to use Dr. Smith to testify to the contrary, that is, that appellant differed from the ordinary homosexual pedophile in that he was capable of reorienting his sexual proclivities through rehabilitation: